**Walter LOMAX, Sr., Administrator of the Estate of Walter Lomax, Jr., Appellant,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY.**

No. 91–3694.

United States Court of Appeals, Third Circuit.

Argued April 9, 1991.

Decided May 18, 1992.

Eliot Alazraki (argued), Gary S. Nitsche, Wilmington, Del., for appellant.

Mason E. Turner, Jr. (argued), Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for appellee.

Before: GREENBERG, SCIRICA, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This diversity suit raises a question of first impression under the laws of Delaware relating to the right of a motorist to recover from his uninsured motorist (UM) carrier, notwithstanding a prior receipt of benefits from another source. Appellant Walter Lomax, Sr. instituted an action as administrator of his decedent son's estate in the United States District Court for the District of Delaware against Nationwide Mutual Insurance Company (Nationwide) seeking recovery of UM benefits. Lomax filed a motion for partial summary judgment claiming the right to recover for medical bills sustained as a result of the decedent's injuries and previously paid by a source unconnected to Nationwide. The district court held that Delaware law would not permit Lomax to receive a second recovery unless payment was predicated upon separate consideration given by the decedent. 776 F.Supp. 870 (D.Del.1991). The court found that the question of consideration created a genuine issue of material fact and therefore rejected plaintiff's motion for summary judgment. We reverse.

## I.

On November 27, 1980, Walter Lomax, Jr., sustained injuries in an automobile accident while driving a friend's motor vehicle that ultimately led to his death. The friend, Kenneth Murrey, had purchased a Delaware automobile insurance policy from Nationwide which was in effect on the date of the accident and which covered Lomax,

Jr., as a permissive user. The Murrey policy provided bodily injury liability coverage in the amount of $100,000 per person/$300,000 per accident and UM coverage of $10,000 per person/$20,000 per accident. All medical bills incurred on behalf of Lomax, Jr. were paid by The Prudential Insurance Company of America (Prudential) through a medical health insurance plan provided by his employer.

On September 15, 1982, the plaintiff filed suit against Nationwide in a Pennsylvania state court seeking to reform the UM portion of the policy for Nationwide's failure to offer higher limits of UM coverage as mandated by 18 Del.C. § 3902(a).[1] Nationwide removed the case to the United States District Court for the Eastern District of Pennsylvania. The court dismissed the suit and denied a motion by Murrey to intervene, holding that the estate lacked standing to reform the policy because it was not a party to the insurance contract. *Lomax v. Nationwide Ins. Co.*, C.A. No. 83–1621 (E.D.Pa. Jan. 30, 1985), *aff'd mem.*, 779 F.2d 43 (3rd Cir.1985).

Murrey thereupon filed suit against Nationwide in the United States District Court for the District of Delaware on June 23, 1986, seeking reformation of the UM portion of the policy. *Murrey v. Nationwide Ins. Co.*, 674 F.Supp. 154 (D.Del.1987). Subsequently, Nationwide made an offer of judgment to permit Murrey to retroactively increase the limits of his UM coverage from $10,000 per person/$20,000 per accident to $100,000 per person/$300,000 per accident. Following Murrey's acceptance of Nationwide's offer of judgment, Lomax made a demand on Nationwide for arbitration to obtain payment of the reformed policy limits. Nationwide refused to arbitrate.

On June 1, 1988, Lomax filed suit against Nationwide seeking an order compelling ar-

---

1. Del.C. § 3902(a) provides in pertinent part: No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered ... in this State unless coverage is provided ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.

bitration and damages for Nationwide's refusal to arbitrate. Lomax filed a motion for partial summary judgment on the grounds that Nationwide is obligated to provide UM benefits to Lomax based on the reformed Murrey policy and that recovery is not barred by collateral estoppel, *res judicata,* the applicable statute of limitations, exclusionary language in the Murrey policy or operation of 12 *Del.C.* § 2102. Lomax further asserted that a non-policy holder may secure benefits of contract reformation and that Delaware's collateral source rule, which denies a tortfeasor any right to offset monies received by the injured plaintiff from sources unconnected with the tortfeasor, applies to UM claims. Application of the collateral source rule would permit Lomax to recover and retain payment of the decedent's medical bills. The district court acted affirmatively on Lomax's motion for partial summary judgment on six of the seven claims, but denied the motion on the ground that whether the collateral source rule allows recovery of the decedent's medical bills raises a genuine issue of material fact. Thereafter, on a stipulation of the parties, the court entered an order dismissing the action. This appeal followed and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We have plenary review of the district court's interpretation and application of legal precepts. *United States v. Adams,* 759 F.2d 1099, 1106 (3rd Cir.), *cert. denied,* 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985). A federal court sitting in a diversity action must apply the substantive law of the state in which it sits. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is undisputed that Delaware law applies in this case. If there is no ruling by the state's highest court, then the federal court must predict how the state's highest court would resolve the issue. *Rabatin v. Columbus Lines, Inc.,* 790 F.2d 22, 24 (3rd Cir.1986). In doing so, "we must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McGowan v. Univ. of Scranton,* 759 F.2d 287, 291 (3rd Cir.1985) (quotation omitted).

The benchmark decision recognizing the adoption of the collateral source rule in Delaware is *Yarrington v. Thornburg,* 58 Del. 152, 205 A.2d 1 (Del.1964). Although the *Yarrington* court did not apply the rule because the source of the disputed payments was the tortfeasor's own insurance carrier, the court stated:

> The collateral source doctrine is predicated upon the theory that a tortfeasor has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected with the defendant. The doctrine, however, does permit the tortfeasor to obtain the advantage of payments made by himself or from a fund created by him; in such an instance the payments come, not from a collateral source, but from the defendant himself.

205 A.2d at 2.

In *State Farm Mutual Automobile Insurance Company v. Nalbone,* 569 A.2d 71 (Del.1989), the Delaware Supreme Court held that the collateral source rule applies in the no-fault insurance context only to the extent that the plaintiff has paid consideration or sustained some detriment for the payments from the collateral source; collateral payments received *gratis* bar a double recovery. *Id.* at 75. Citing *Nalbone,* the district court here found that "the Delaware Supreme Court has already considered and decided the question of how they would deal with the recovery of duplicate expenses in a first-party contractual context." The court thus held that Lomax may recover from both Nationwide and Prudential only if the decedent paid consideration to Prudential.

The district court's reliance on *Nalbone* is misplaced. The *Nalbone* court made clear that its decision was limited to no-fault insurance,

> The collateral source rule, with its emphasis on turning a blind eye to the prospect of double recovery so as not to

confer a benefit on a wrongdoer, discourages analysis of the critical inquiry in the area of no-fault insurance: what is the actual loss for which compensation should be quickly expected without regard to fault?

569 A.2d at 75.

■■■ Moreover, the district court here erroneously utilized a no-fault type of analysis to resolve the present UM question. First, although both no-fault insurance and UM insurance provide first-party benefits to an injured insured, the two types of coverage serve different purposes. No-fault benefits are designed to assure prompt payment to an injured person for medical expenses and basic economic losses arising from automobile accidents, irrespective of fault. UM coverage, on the other hand, is designed to compensate innocent persons injured by an automobile who are unable to obtain recompense from unknown or impecunious negligent tortfeasors for general damages, such as pain and suffering, as well as economic losses. *See State Farm Mut. Auto. Ins. Co. v. Abramowicz*, 386 A.2d 670, 672 (Del.1978); 3 *Damages in Tort Actions* § 17.24[3], at 17–111–12 (1991). UM coverage is intended to place the insured in the same position he or she would have been in if the tortfeasor had carried the same liability coverage which the insured carried, up to the maximum amount permitted by statute. *See Brown v. Comegys*, 500 A.2d 611, 613 (Del.Super.Ct.1985); 18 *Del.C.* § 3902 (providing that insured who has UM coverage may recover all damages he or she would have been "legally entitled to recover" from the negligent motorist). Stated more simply, UM coverage is intended to assure that the insured will not be left with a worthless cause of action against an uninsured motorist tortfeasor.

The second important difference between the two types of insurance is that UM benefits are based on fault. To receive these benefits, the insured must show that the other party involved in the accident was negligent and that the other vehicle was uninsured. 5 *Damages in Tort Actions* § 47.51 at 47–171 (1991). The *Nalbone* court acknowledged that the collateral source rule, a fault-based doctrine, is at odds with a no-fault system of insurance. The court stated that use of the collateral source rule to permit receipt of no-fault insurance payments to compensate for wage losses that did not actually occur "sanctions a windfall for insureds by introducing a *fault-based doctrine* into a no-fault system of insurance." 569 A.2d at 76 (emphasis added).[2]

The third significant difference between no-fault insurance and UM insurance is that UM coverage is not compulsory. Unlike no-fault coverage, which is mandatory under 21 *Del.C.* § 2118, UM coverage is available at the option of the insured. *See* 18 *Del.C.* § 3902(a)(1). The Delaware Supreme Court found this aspect of UM insurance important in a case in which it held that the collateral source rule is applicable when an injured person receives both UM benefits and workmen's compensation insurance. In *Adams v. Delmarva Power & Light Co.*, 575 A.2d 1103 (Del.1990), the court held that the collateral source rule prevents a workmen's compensation carrier from obtaining a lien or set-off of UM benefits that are paid pursuant to a UM provision contained in the employee's personal automobile insurance policy. The *Adams* court distinguished an earlier case in which it held that an employer may offset UM recovery with workmen's compensation benefits paid by the employer's insurer when the employer has purchased the UM coverage for the employee. *Harris v. New Castle County*, 513 A.2d 1307, 1309 (Del.1986). In *Adams*, the UM proceeds came from insurance purchased by the employee himself. The court reasoned that the public policy underlying section

---

**2.** Some states prevent strict application of the collateral source rule to UM claims by statute. *See* 3 *No–Fault and Uninsured Motorist Automobile Insurance* § 31.70, at 31–35–36 (1989). Delaware has not done so. If the Delaware General Assembly desires to give a UM carrier a right to set off payments made by a collateral source, it can do so expressly by amending the statute. *Compare* Delaware's no-fault statute, 21 *Del.C.* § 2118(g) (stating that insured may not recover from insurer or tortfeasor to the extent that payments are received from a collateral source).

3902 permits a person to contract to establish a fund for supplemental coverage to protect against losses caused by uninsured motorists and found that Adams had done so.

■ Nationwide argues that this case is distinguishable from *Adams*. Adams's UM policy expressly precluded the coverage from accruing to the benefit of a workmen's compensation insurance carrier, 575 A.2d at 1107, whereas the policy in this case does not prohibit any set-off. However, the rationale of *Adams* extends to this case and public policy supports such an extension.[3]

The *Adams* court relied upon the *Nalbone* holding that the public policy of Delaware allows a risk-averse insured to contract for additional recovery. 575 A.2d at 1107–08 (citing *Nalbone*, 569 A.2d at 75). The court emphasized that UM insurance is supplemental in nature. *Id.* at 1107. The insured directly contributes to the fund providing the collateral benefits in the form of insurance premiums for UM coverage.[4] Application of the collateral source rule to the receipt of UM benefits will encourage the purchase of insurance for protection against accidents. If an insurer is allowed to reduce the judgment against it by the amount of collateral benefits paid, insureds will suffer a net loss because they will derive no benefit from the UM insurance for which they paid premiums. The insurer, on the other hand, will realize an unwarranted windfall advantage, benefitting from the receipt of premiums and being relieved of the obligation to pay UM benefits. Application of the collateral source rule to UM actions also serves the public policy of favoring the innocent party over the tortfeasor.[5]

Delaware courts consistently have struck down restrictions on UM coverage. *See e.g.*, *Frank v. Horizon Assur. Co.*, 553 A.2d 1199, 1205 (Del.1989) (invalidating other motor vehicle exclusion barring UM coverage for claim involving owned vehicle not listed as covered vehicle); *State Farm Mut. Auto. Ins. Co. v. Abramowicz*, 386 A.2d 670 (Del.1978) (declaring void policy provision requiring physical contact to trigger UM coverage in "hit-and-run" situation); *Jeanes v. Nationwide Ins. Co.*, 532 A.2d 595 (Del.Ch.1987) (invalidating exclusion barring UM coverage for motor vehicles used for fee). The *Frank* court held that once UM coverage is purchased, the insured is entitled to the full amount of protection under the statute and any attempts by insurers to reduce the coverage by exclusion clauses are repugnant to the public policy of protecting persons injured in automobile accidents. 553 A.2d at 1205. Thus, Delaware case law supports the conclusion that the Delaware Supreme Court would apply the collateral source rule in this case to provide the fullest UM recovery possible.

---

3. This conclusion is consistent with the majority of jurisdictions which apply the collateral source rule to UM actions. *See* 3 *Damages in Tort Actions* § 17.24[5], at 17–172–73 (1990) (footnotes omitted); *see e.g.*, *Wills v. State Farm Mut. Auto. Ins. Co.*, 364 N.W.2d 504 (Minn.Ct. App.1985) (holding workmen's compensation benefits cannot be set off from UM payments because UM statute is not a no-fault act); *Hawthorne v. Southeastern Fidelity Ins. Co.*, 387 So.2d 26 (La.Ct.App.1980) (holding that trial court properly applied collateral source rule to suit by insured against his UM carrier because insured was "legally entitled to recover" damages; evidence of payment of leave benefits was irrelevant and properly excluded); *Beaird v. Brown*, 58 Ill.App.3d 18, 15 Ill.Dec. 583, 373 N.E.2d 1055 (1978) (holding UM payments should not be offset because "[t]o allow the defendant to reduce his liability because the plaintiffs exercised a contract right of recovery

against their insurer, a right for which the plaintiffs paid consideration in the form of premiums, would be an unjust enrichment of the defendant").

4. In this case, Murrey, not the decedent, contributed to the UM fund. However, the district court correctly found that Murrey paid premiums to provide UM coverage for Lomax, Jr. and other permissive users of Murrey's automobile.

5. Although application of the collateral source rule may result in a windfall to the insured, public policy favors this result because the insured is the innocent party. A double recovery by the insured usually may be prevented by the operation of the insurer's exercise of its subrogation rights. *See California's Collateral Source Rule and Plaintiff's Receipt of Uninsured Motorist Benefits*, 37 Hastings L.J. 667, 686–87 (1986).

### III.

The Delaware Supreme Court has established that UM insurance is supplemental coverage and that a risk-averse insured may contract for additional recovery by purchasing UM insurance. We thus predict that the Delaware Supreme Court would apply the collateral source rule to the UM context. This conclusion is supported by Delaware case law, the law of other jurisdictions and public policy. In this case, Murrey purchased UM insurance in behalf of himself and those permissively using his automobile, thus allowing a second recovery. The decedent was a permissive user covered by the terms of the UM policy and is therefore entitled to the collateral source benefits.

Accordingly, the order of the district court will be reversed and this case remanded with directions to enter summary judgment in favor of the appellant Lomax.