**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant Below, Appellant,**

v.

**Columbus C. NACCHIA, III, and Deborah A. Nacchia, his wife, Plaintiffs Below, Appellees.**

Supreme Court of Delaware.

Submitted: May 13, 1993.
Decided: July 20, 1993.
Rehearing Denied Aug. 13, 1993.

James W. Semple (argued), and Joseph R. Slights, III of Morris, James, Hitchens & Williams, Wilmington, for appellant.

Ben T. Castle (argued) of Young, Conaway, Stargatt & Taylor, Wilmington, and Sotiere S. Kapsalis, Wilmington, for appellees.

Before HORSEY, and HOLLAND, JJ., and ALLEN, Chancellor, (sitting by designation pursuant to Del. Const. art. IV, § 12).

HOLLAND, Justice:

This is an interlocutory appeal.[1] It involves a dispute between an insurer, the defendant-appellant, Nationwide Mutual Insurance Company ("Nationwide"), and its insured, Columbus C. Nacchia, III, and Deborah A. Nacchia (the "Nacchias"). At issue is the construction of underinsured motorist coverage in the automobile insurance policy purchased by the Nacchias from Nationwide.

The Superior Court held that the Nacchias were eligible to pursue a recovery of underinsured motorist benefits from Nationwide, notwithstanding the terms of the release executed by the Nacchias in favor of the underinsured tortfeasor, Margaret C. Hanright ("Hanright"). Nationwide has raised several issues in this appeal. However, we have determined that one of Nationwide's contentions is case dispositive.

Nationwide argues that its insurance policy, as well as the Delaware statute, establishes a condition precedent to the Nacchias eligibility for underinsured motorist benefits, i.e., that the Nacchias be "legally entitled to recover" damages from the underinsured tortfeasor. 18 *Del.C.* § 3902(b)(1). We agree. Accordingly, the interlocutory judgment of the Superior Court to the contrary must be reversed.

*Facts*

The essential facts are not in dispute. On December 18, 1986, Columbus C. Nacchia, III ("Mr. Nacchia"), was involved in a multi-vehicle collision in New Castle County, Delaware. Mr. Nacchia suffered personal injuries as a result of the accident. Also involved in the collision were Victor Wesley Bean, Jr. ("Bean"), who was driving a motor vehicle during the course of his employment with Chester Mack Sales and Service, Inc. ("Chester Mack"), Lorreta E. Robinson ("Robinson"), and Margaret C. Hanright ("Hanright").

On November 15, 1988, Mr. Nacchia, and his wife, Deborah A. Nacchia, filed a complaint in the Superior Court. The complaint alleged that Bean, Chester Mack, Robinson and Hanright were jointly and severally liable for property damages arising from their negligence and for personal injuries that Mr. Nacchia had sustained. Mrs. Nacchia claimed loss of consortium.

The Nacchias reached a settlement with Hanright prior to trial. Pursuant to a document entitled "joint tortfeasors release" ("Hanright Release"), Mr. and Mrs. Nacchia agreed, *inter alia*, to:

remise, release and forever discharge Richard Gibson, Margaret Hanright and their heirs, executors, administrators and assigns and all persons or *entities which may be liable through them, including their insurance carriers* ... from any and all claims, demands, liabilities, actions and causes of action and suits of any kind or nature whatsoever, including but not limited to claims for contribution or indemnity and to all claims for losses, damages, injuries or death or property damage, known or unknown, which have resulted or may result in the future from the accident which occurred on or about December 18, 1986, at or near New Castle, Delaware. Without limiting the foregoing, it is expressly understood that the Releasees are *released from all liability direct, secondary, vicarious or other-*

---

1. On July 10, 1992, Nationwide filed a Motion for an Order Certifying an Interlocutory Appeal with the Superior Court. The Superior Court granted the Motion for Certification on July 30, 1992. Nationwide filed a Supplementary Notice of Appeal the following day. On August 28, 1992, this Court granted Nationwide's appeal from interlocutory orders of the Superior Court.

*wise for the acts or omissions of any and all other alleged tortfeasors.* (emphasis added).

Mr. and Mrs. Nacchia also agreed to protect Hanright from any claims for contribution, or any other claims pursued by the other joint tortfeasors. In this regard, the Hanright Release provided:

> I further agree that any judgment entered against other alleged tortfeasors in any action instituted to recover damages arising out of the above-described accident, whether the liability of such other tortfeasors is based on negligence, strict liability, warranty or otherwise, shall be reduced by the amount of consideration paid for this Release or the full proportional amount of the shares of the Releasees attributed by the Court of [sic] jury to the Releasees, whichever of the amounts is greatest, whether or not the Releasees are in fact a joint tortfeasor(s).

The Hanright Release further states that it is "... a FULL AND COMPLETE SETTLEMENT (original emphasis) of all liability claimed and denied, and that *regardless of the adequacy or inadequacy of the amount paid, it is intended to avoid litigation and to be final and complete.*" (emphasis added). Finally, the Hanright Release provided that the Nacchias had "read this Release, and there is absolutely no agreement or reservation other than as clearly expressed herein..."

In consideration for the Hanright Release, Mr. and Mrs. Nacchia received a $15,000.00 payment from Hanright's insurance carrier. That payment represented the policy limits of Hanright's automobile liability insurance policy. The Nacchias were represented by counsel when they signed the Hanright Release.

After settling with Hanright, the Nacchias made a demand upon their own insurance carrier, Nationwide Mutual Insurance Company ("Nationwide"), for underinsured motorist ("UIM") benefits pursuant to their own automobile insurance policy with Nationwide. The Nacchias' Nationwide automobile insurance policy provided, in pertinent part, that the insurer would pay "all sums the 'insured' is *legally entitled to*

recover as damages from the owner or driver of ... 'an underinsured motor vehicle.'" As a result of the Hanright Release, and based upon the foregoing language in its insurance policy, Nationwide refused to pay UIM benefits to the Nacchias.

On December 15, 1989, Mr. and Mrs. Nacchia filed a complaint in the Superior Court against Nationwide. That complaint alleged their entitlement to UIM benefits, pursuant to their automobile insurance policy with Nationwide. Conversely, Nationwide sought a declaration from the Superior Court that it was not required to pay any amounts by the underinsured provisions of its contract of insurance with the Nacchias.

On January 10, 1990, Mr. and Mrs. Nacchia executed a "Joint Tortfeasor Release" with respect to their claims against Robinson ("Robinson Release"). The Robinson Release "remised, released, and forever discharged" Robinson and her insurance carrier. The Robinson Release also provided:

> [S]hould it be determined that any person, persons, entity or entities not released herein is jointly and severally liable to the undersigned with the Releasees, in tort or otherwise, the claim against and damages recoverable from all such other persons or entities shall be reduced by the greater of the following amounts:
>
> (a) To the extent of the pro rata share of the Releasees of liability or responsibility for such damages; and
>
> (b) The sum of Thirty–Six Thousand Dollars ($36,000) [the amount of consideration paid for the Robinson Release].

The Robinson's insurance carrier paid the $36,000.00 to Mr. and Mrs. Nacchia from Robinson's available $300,000.00 of liability insurance coverage.

On June 3, 1991, the parties stipulated that Mr. and Mrs. Nacchias' lawsuit against the remaining tortfeasors, Bean and Chester Mack, would be severed from the lawsuit against Nationwide in order that the lawsuit against them could pro-

ceed to trial.[2] The Nacchias' case against Bean and Chester Mack was tried on September 9 and 10, 1991. Although at the time of trial, only defendants Bean and Chester Mack remained in the case, the jury was asked to apportion fault among each of the alleged joint tortfeasors.

At the conclusion of trial, the jury returned a verdict of $250,000.00 for Mr. Nacchia and $25,000.00 for Mrs. Nacchia. The jury allocated percentages of negligence as follows: Bean/Chester Mack, 51%; Hanright, 18%; Robinson, 18%; Mr. Nacchia, 13%. The award for Mr. Nacchia was reduced by $32,500.00, as a result of his 13% comparative negligence. In accordance with the joint tortfeasor releases executed by Mr. and Mrs. Nacchia, the verdict was further reduced by $78,300.00 for the *pro rata* share of negligence attributed to Robinson and Hanright. Consequently, Mr. Nacchia was awarded $139,200.00. Mrs. Nacchia's verdict also was reduced by her husband's 13% comparative negligence. Therefore, she received a judgment verdict of $21,750.00. The liability insurance carrier for Bean and Chester Mack paid the Nacchias a total of $160,950.00, since Bean and Chester Mack had $500,000 of coverage.[3]

On September 11, 1991, the parties stipulated as to the dismissal with prejudice of Mr. and Mrs. Nacchias' claims against Hanright. The Stipulation of Dismissal stated, however, that Nationwide's signature on the Stipulation "shall not be construed as a waiver of Nationwide's position that it cannot be considered a tortfeasor for purposes of the Delaware Uniform Contribution Among Joint Tortfeasor's Statute." *See* 10 *Del.C.* §§ 6301–6304. The stipulation of dismissal did not recite any reservation of rights by the Nacchias.

Thereafter, Mr. and Mrs. Nacchia demanded payment of $34,500.00 from Nationwide, pursuant to their UIM coverage. According to Mr. and Mrs. Nacchia, be-

cause the jury had apportioned 18% of the fault to Hanright, they were entitled to recover $49,500.00 from Hanright. However, since Hanright had only paid $15,000.00 (her liability insurance policy limits), the Nacchias contended that they were entitled to receive the $34,500.00 difference from Nationwide, their UIM carrier. Nationwide, which continued to dispute Mr. and Mrs. Nacchias' eligibility to any UIM benefits, filed a Motion for Summary Judgment.

On June 15, 1992, the Superior Court issued a memorandum opinion denying Nationwide's motion for summary judgment. On June 22, 1992, Nationwide sought reargument on the basis, *inter alia*, that the Superior Court had failed to address the unambiguous terms of the Nacchias' UIM policy and the legal effect of the Nacchias' execution of the Hanright Release. The Superior Court denied Nationwide's motion for reargument.

### Legally Entitled to Recover

▮ Delaware law requires an insurer to pay an underinsured motorist claim for damage due to bodily injury which the insured is "legally entitled to recover from the driver of an underinsured motor vehicle." 18 *Del.C.* § 3902(b)(1). 18 *Del.C.* § 3902(b)(1) states:

Acceptance of such additional coverage shall operate to amend the policy's uninsured coverage to pay for bodily injury damage that the insured or his legal representative are *legally entitled to recover* from the driver of an underinsured motor vehicle. (emphasis added).

The term "legally entitled to recover" appears in the Nationwide Nacchia policy, as follows:

1. We will pay all sums the "insured" is *legally entitled to recover* as damages from the owner or driver of:

---

**2.** By order dated November 2, 1990, Mr. and Mrs. Nacchias' lawsuit against the individual tortfeasors and their lawsuit against Nationwide were consolidated for pre-trial purposes only. The order recognized the party's right to move for a separate trial on any claim or issue. It

was further stipulated that the lawsuit against Nationwide would not proceed to trial.

**3.** On October 21, 1991, the judgement was marked "satisfied" by the Prothonotary.

a. an "uninsured motor vehicle" or an "underinsured motor vehicle".... (emphasis added).

This Court has held that the meaning of the phrase "legally entitled to recover," in the context of underinsured motorist coverage, "is a question of law subject to concise legal definition." *Travelers Indemnity Company v. Lake*, Del.Supr., 594 A.2d 38, 42, n. 2 (1991). However, in *Travelers*, it was unnecessary for this Court to construe the term "legally entitled to recover." Nationwide now urges this Court to construe that term literally.

Nationwide contends that as a result of the Hanright Release, literally, Mr. and Mrs. Nacchia are not now currently "legally entitled to recover" any damages from the underinsured tortfeasor, Hanright. Therefore, Nationwide argues that pursuant to the language of their UIM policy, which tracks the language of 18 *Del.C.* § 3902(b)(1), the Nacchias are not eligible to recover UIM benefits from Nationwide. Nationwide's argument is supported by persuasive authority from Rhode Island, which held in favor of the insurer under similar circumstances and, which involved similar statutory and policy language. *See Gosselin v. Automobile Club Insurance Company*, R.I.Supr., 574 A.2d 1243 (1990). *See also Silvers v. Horace Mann Insurance Company*, N.C.Supr., 324 N.C. 289, 378 S.E.2d 21 (1989). *But see Barfield v. Barfield*, Okl.Supr., 742 P.2d 1107 (1987); *Uptegraft v. The Home Insurance Company*, Okl.Supr., 662 P.2d 681 (1983).

In *Gosselin*, the injured plaintiffs, a husband and wife, settled with the sole tortfeasor. *Gosselin v. Automobile Club Insurance Company*, 574 A.2d at 1245. The plaintiffs and their two children then made a demand on their own insurer under the UIM section of their automobile insurance policy. *Id.* The applicable UIM statute was then in Rhode Island as follows:

An underinsured motorist is the owner or operator of a motor vehicle who carries automobile liability insurance with coverage in an amount less than the amount of damages that persons insured pursuant to this section are *legally entitled to recover* because of bodily injury, sickness or disease, including death resulting therefrom.

*Id.* (emphasis added). The Rhode Island Supreme Court construed the term "legally entitled to recover" literally:

In arriving at our conclusion, we focus on the language of [the UIM statute] relating to a person being "legally entitled to recover" against a tortfeasor. As Mr. and Mrs. Gosselin were *not legally entitled to recover from [the tortfeasor] because of the settlement between the parties*, we conclude that Mr. and Mrs. Gosselin could not collect under their own underinsured-motorist insurance policy.

*Id.* at 1246. That court also held, conversely, that the children of Mr. and Mrs. Gosselin, who had not settled with the tortfeasor, were "legally entitled" to maintain a cause of action against the tortfeasor. *Id.*[4]

### This Case

In *Travelers*, this Court, sitting *en Banc*, held that the phrase "legally entitled to recover" is unambiguous. *Travelers Indemnity Company v. Lake*, 594 A.2d at 42 n. 2. It also held the meaning of that phrase presented "a question of law subject to concise legal definition." *Id.* That holding requires the phrase "legally entitled to recover" to be construed literally.

■ The record reflects that the Nacchias are *not* now "legally entitled to recover" damages from the underinsured tortfeasor,

4. The ruling in *Gosselin*, construing the statutory term, "legally entitled to recover" literally, has since been superseded by act of the Rhode Island Legislature. *See LeFranc v. Amica Mutual Insurance Company*, R.I.Supr., 594 A.2d 382, 384 (1991). The amendment to the Rhode Island UIM statute provides:

Release of the tortfeasor with the consent of the company providing the underinsured coverage shall not extinguish or bar the claim of the insured against the underinsurance carrier regardless of whether the claim has been liquidated.

*Id.* at 384 n. 1. The Delaware General Assembly has also amended statutes following a judicial construction of their meaning. *See e.g., Lillard v. State*, Del.Supr., 531 A.2d 613 (1987).

Hanright, as a result of their execution of the Hanright Release. The terms of that release were unqualified, providing unequivocally for a FULL AND COMPLETE SETTLEMENT. Thus, unlike other releases, the Hanright Release included no reservation of any rights by the Nacchias. *See Furek v. University of Delaware,* Del. Supr., 594 A.2d 506, 525 (1991). In the absence of a reservation of rights by the Nacchias in the Hanright Release, their stated intention for a "final and complete" release of Hanright, without regard to the "adequacy or the inadequacy of the consideration," precludes their recovery under the terms of their Nationwide UIM policy.[5]

### *Conclusion*

The interlocutory judgment of the Superior Court is REVERSED. This matter is remanded for further proceedings in accordance with this opinion.

---

**5.** "Delaware law, as a general proposition, favors the voluntary settlement of contested issues." *Kahn v. Sullivan,* Del.Supr., 594 A.2d 48, 58 (1991) (citing *Nottingham Partners v. Dana,* Del.Supr., 564 A.2d 1089, 1101–02 (1989)). The Nacchias suggest that this Court's literal construction of the phrase "legally entitled to recover" will deter settlements in the future. However, the only effect that this decision should have upon settlements in the future is with regard to how they are worded. *See e.g. Furek v. University of Delaware,* 594 A.2d at 525.