Joseph CONNELL, Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY and West American Insurance Company of the Ohio Casualty Group of Insurance Companies, Defendants.

Civ. A. No. 92–674–JJF.

United States District Court,
D. Delaware.

Jan. 13, 1994.

Stephen B. Potter, of Potter Crosse & Leonard, Wilmington, DE, for plaintiff.

Stephen P. Casarino and Donald M. Ransom, of Casarino Christman & Shalk, Wilmington, DE, for defendant West American Ins. Co.

Mark L. Reardon, of Elzufon Austin & Drexler, Wilmington, DE, for defendant Liberty Mut. Ins. Co.

## OPINION

FARNAN, District Judge.

### I. INTRODUCTION

Presently before the Court in this diversity action are Cross–Motions for Summary Judgment filed by the parties. (D.I. 32, 37, 38). The Plaintiff, Joseph Connell brought the present action against two Delaware insurance companies, Liberty Mutual Insurance Company ("Liberty Mutual") and West American Insurance Company ("West American"), seeking damages arising out of a 1989 automobile accident that occurred in Media, Pennsylvania. In December 1992, with his father serving as guardian, the Plaintiff sued Arnold Mattei, Jr. ("the tortfeasor") in Delaware Superior Court, and obtained a judgment in the amount of $150,000 which was completely satisfied by the tortfeasor's liability insurance carrier.

Now, by way of the instant lawsuit, Plaintiff seeks to recover additional monies from Defendants pursuant to certain underinsured motorist provisions contained in insurance policies issued by Defendants to Plaintiff's parents. Because the Court concludes that the tortfeasor was not underinsured, and that Plaintiff is collaterally estopped from proceeding against Defendants, the Court will grant the Summary Judgment Motions filed by Defendants and deny Plaintiff's Cross–Motion for Summary Judgment.

### II. FACTS

The parties have stipulated to the following facts:

1. On March 27, 1989, Joseph Connell, who was then a minor, was injured in an automobile accident that occurred near Media, Pennsylvania. At the time of the accident, Joseph Connell was a resident of the State of Delaware and a passenger in a motor vehicle registered in Delaware. All applicable policies of insurance were Delaware contracts. Thus, the parties agree that Delaware law applies in this case.

2. On or about October 16, 1990, Thomas Connell, Joseph's father, commenced a lawsuit on behalf of Joseph in the Delaware Superior Court, C.A. No. 90C–10–146, against Arnold Mattei, Jr. for the injuries arising out of the March 27, 1989 accident. The complaint filed in the Superior Court lawsuit alleged negligence and wanton conduct by Mr. Mattei in regard to the March 27 accident and sought general, special and punitive damages.

3. At the time of the accident, Joseph Connell was insured by Defendant West American Insurance Company, under two separate policies.

The first policy was issued to Thomas W. and Millicent K. Connell. The policy provided for uninsured/underinsured motorist benefits in the amount of $300,000.

The second policy was a garage policy insuring Tom Connell's Gulf Service, a gas station business operated by Thomas Connell. Like the first policy, the garage policy provided uninsured/underinsured motorist coverage benefits. The garage policy limits for these benefits was $500,000. Both policies extend coverage to members of the household of Thomas and Millicent Connell, and both on the date of the accident and the filing of the complaint, Joseph Connell was a member of the household of his parents.

4. On the date of the accident, the vehicle in which Joseph Connell was a passenger was insured by Defendant Liberty Mutual. The relevant policy was issued to Kenneth and Janice Hampton ("the Hamptons"), owners of the vehicle in which Joseph Connell was a passenger at the time of the accident. The Liberty Mutual policy provided underinsured motorist coverage in the amount of $300,000 single limit, including passengers of the covered automobile.

5. The Delaware Superior Court case was tried to a jury on August 3–5, 1992. The Connells did not seek or obtain the consent of either West American Insurance Company or Liberty Mutual before commencing the superior court action. While evidence of loss of earning capacity of Joseph Connell was offered at the trial, the superior court granted a motion in limine disallowing such evidence in the absence of a reduction of the loss of earning capacity to a sum certain representing present value.

6. The jury returned a verdict in favor of Joseph Connell on August 6, 1992, in the total amount of $150,000. No motion for new trial or additur was made by Plaintiff, nor was an appeal taken from the verdict.

7. Mr. Mattei, the tortfeasor, was insured for liability under a policy issued by Nationwide Insurance Company. The liability limit of said policy was $100,000. Despite the policy's $100,000 limit, Nationwide paid Joseph Connell the entire amount of the $150,000 judgment, and on October 14, 1992, the superior court judgment was satisfied.

8. Thereafter, Joseph Connell demanded underinsured motorist arbitration from West American and Liberty Mutual, the Defendants in this action. The arbitration demand was refused by both companies.

The West American insurance policy issued to Thomas and Millicent Connell provides, in relevant part:

> We will pay damages which a covered person is legally entitled to recover from the owner or operator of an:
>
> 1. Uninsured motor vehicle or underinsured motor vehicle because of bodily injury:
>
> a. sustained by a covered person; and
>
> b. caused by an accident ...
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured/underinsured motor vehicle. We will pay damages under this coverage caused by an accident with an underinsured motor vehicle only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgment or settlements.
>
> Any judgment for damages arising out of a suit brought without our written consent is not binding on us.
>
> . . . .
>
> ARBITRATION
>
> If we and a covered person do not agree:
>
> 1. Whether that person is legally entitled to recover damages under this [endorsement]; or
>
> 2. As to the amount of damages;
>
> either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third.
>
> . . . .
>
> A decision agreed to by two of the arbitrators will be binding as to:
>
> 1. Whether the covered person is legally entitled to recover damages . . . .

(D.I. 34 at A23, A17) (emphasis omitted). The relevant language of the garage policy is materially indistinguishable from the personal policy. (D.I. 34 at A52–53).

The Liberty Mutual insurance policy provides, in relevant part:

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"
>
> 1 Sustained by an "insured;" and
>
> 2. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."
>
> Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

(D.I. 34 at A75).

The Liberty Mutual policy issued to the Hamptons also includes an arbitration provision that is materially indistinguishable from that found in the West American policy. (D.I. 34 at A76).

## III. STANDARD OF REVIEW

Where there are no genuine issues of material fact in dispute and both parties move for summary judgment, the court must determine whether either party is entitled to judgment as a matter of law. *See Manetas v. International Petroleum Carriers, Inc.,* 541 F.2d 408, 413 (3d Cir.1976). After a review of the stipulated facts and the relevant insurance policies, the Court finds that the material facts in this case are not in dispute. Therefore, summary judgment is appropriate.

A federal court sitting in a diversity action must apply the substantive law of the state in which the court sits. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties and the Court agree that Delaware law applies in this matter. However, since there is no ruling from Delaware's highest court on the issues presented by this diversity action, this Court must predict how that court would resolve the issues. *Lomax v. Nationwide Mut. Ins. Co.,* 964 F.2d 1343, 1345 (3d Cir.1992). In this regard, this Court "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Id.* (quoting *McGowan v. University of Scranton,* 759 F.2d 287, 291 (3d Cir.1985)).

## IV. THE ISSUE

The focal issue before the Court is whether Joseph Connell, who was injured by the negligence of a tortfeasor and who proceeded to trial on all his possible claims against the tortfeasor and obtained a judgment, which the tortfeasor subsequently satisfied in full, can now proceed against "his" insurance carrier under an underinsured motorist provision of an insurance policy. To resolve this issue, two questions must be addressed: (1) whether the tortfeasor who caused the injury to Plaintiff was "underinsured" so as to activate the underinsured motorist provisions of the relevant policies issued by Defendants; and/or (2) whether, by virtue of the Delaware Superior Court action and subsequent satisfaction of the judgment entered in that action, Plaintiff is collaterally estopped from

proceeding against the Defendant insurance companies under the underinsured motorist provisions of the subject policies.

The Defendant insurance companies contend that under the doctrine of collateral estoppel, Plaintiff is barred from relitigating the issue of damages because Plaintiff obtained a judgment on all of his claims that judgment has been satisfied in full. Defendants contend that the satisfaction of the entire amount of Plaintiff's damages award extinguishes Plaintiff's legal entitlement to collect any further damages, specifically damages pursuant to the underinsured motorist provisions of the relevant insurance policies. Thus, Defendants argue that because the tortfeasor fully satisfied the damages award obtained by Plaintiff in the Superior Court lawsuit, the tortfeasor cannot be considered an "underinsured" motorist under the subject policies.

Plaintiff responds by arguing that the Delaware statute governing underinsured motorist coverage requires, prior to proceeding under an underinsured provision of an insurance policy, exhaustion of the tortfeasor's liability coverage. Thus, Plaintiff contends that the doctrine of collateral estoppel is inapplicable. Further, Plaintiff argues that Defendants have waived the applicability of the doctrine of collateral estoppel because the relevant insurance policies require arbitration if the parties dispute either liability or damages.

## V. DISCUSSION

As discussed previously, because Delaware's highest court has not considered the issue presently before the Court, the Court must predict how the Delaware Supreme Court would resolve this dispute. *See Lomax v. Nationwide Mut. Ins. Co.,* 964 F.2d 1343, 1345 (3d Cir.1992). In doing so, the Court will consider various decisions of the Delaware courts on analogous issues. *See id.*

Delaware law requires that underinsured motorist coverage be made available to all insured motorists. In this regard, title 18, section 3902(b) of the Delaware Code provides, in pertinent part:

(b) Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. Such additional insurance shall include underinsured bodily injury liability coverage.

(1) Acceptance of such additional coverage shall operate to amend the policy's uninsured coverage to pay for bodily injury damage that the insured or his legal representative are legally entitled to recover from the driver of an underinsured motor vehicle.

(2) An underinsured motor vehicle is one for which there may be bodily injury liability coverage in effect, but the limits of bodily injury liability coverage under all bonds and insurance policies applicable at the time of the accident total less than the limits provided by the uninsured motorist coverage. These limits shall be stated in the declaration sheet of the policy.

(3) The insurer shall not be obligated to make any payment under this coverage until after the limits of liability under all bodily injury bonds and insurance policies available to the insured at the time of the accident have been exhausted by payment of settlement or judgments.

Del.Code Ann. tit. 18, § 3902(b) (1989).

Underinsured motorist insurance ("UIM insurance") is to be construed similarly to uninsured motorist insurance ("UM insurance"). *See Home Ins. Co. v. Maldonado,* 515 A.2d 690, 696 (Del.1986). The "public policy [underlying UM/UIM insurance] is achieved by making available coverage that mirrors [an insured's] liability insurance...." *Jones v. State Farm Mut. Auto. Ins. Co.,* 610 A.2d 1352, 1354 (Del.1992) (quoting *Frank v. Horizon Assurance Co.,* 553 A.2d 1199, 1205 (Del.1989) (internal alterations in original)).

### A. Was the Tortfeasor Underinsured?

■ The Court is persuaded that the term "underinsured" as used in the Delaware statute and the subject insurance policies contemplates a motorist/tortfeasor who causes greater damage to a tort claimant than the motorist/tortfeasor can satisfy out of the motorist's liability insurance. Thus, where the motorist/tortfeasor fully and completely satisfies a damage award obtained by the tort claimant, it must follow that the motorist is not underinsured with respect to that tort claimant. In the Court's view, such a reading of the term "underinsured" as contained in title 18, section 3902 of the Delaware Code and the subject insurance policies is consistent with the public policy of requiring that insurers make available to all insureds underinsured motorist coverage. *See Lomax v. Nationwide Mut. Ins. Co.,* 964 F.2d 1343, 1346 (3d Cir.1992) (citing *Brown v. Comegys,* 500 A.2d 611, 613 (Del.Super.1985)); *see also Georgeopoulos v. State Farm Mut. Auto. Ins. Co.,* No. 88C–AP–34, 1990 WL 91085, at *3 (Del.Super. June 19, 1990) (language of section 3902(b)(2) indicates that the actual recovery received by the insured, not merely the hypothetical limit of recovery determines the applicability of coverage).

■ In applying this interpretation to the present case, the Court concludes that Plaintiff (the tort claimant) is in the same position in which he would have been had the tortfeasor carried the same coverage as Plaintiff had under the underinsured coverage provisions of "his" policies. This is because all of Plaintiff's damages resulting from the accident and evidenced by the Delaware Superior Court jury award were paid in full by the tortfeasor's liability insurer. Under these circumstances, the Court must conclude that Plaintiff has no claim against the Defendant insurance carriers for an underinsured coverage claim for the plain reason that the motorist/tortfeasor responsible for Plaintiff's damages was not "underinsured." *See Motorists Mut. Ins. Cos. v. Handlovic,* 23 Ohio St.3d 179, 492 N.E.2d 417, 419 (1986) (holding, under similar statute and contract, motorist/tortfeasor who was able to satisfy judgment in full was not underinsured motorist).

### B. Does the Doctrine of Collateral Estoppel Apply?

In *Nationwide Mutual Insurance Co. v. Nacchia,* 628 A.2d 48 (Del.1993), the Dela-

ware Supreme Court recently considered the question of whether a tort claimant could recover under a UIM insurance provision where the tort claimant had accepted the limits of the tortfeasor's policy in settlement and then signed a release with respect to the tortfeasor. The UIM provision in the insurance contract provided that the insurer would pay "all sums the 'insured' is legally entitled to recover as damages from the owner or driver of ... 'an underinsured motor vehicle.'" *Id.* at 50 (emphasis omitted). Following the supreme court decision in *Travelers Indemnity Co. v. Lake,* 594 A.2d 38, 42 n. 2 (Del.1991), the court in *Nacchia* stated that the phrase "legally entitled to recover" is unambiguous and presents "a question of law subject to concise legal definition." *Id.* at 52. The court in *Nacchia* then construed the phrase "legally entitled to recover" literally. *Id.* The court held that because the tort claimant had signed a release that was a "Full and Complete Settlement" of their claim against the tortfeasor without reservation of rights, the tort claimant was not "legally entitled to recover" anything further against the UIM insurance carrier. *Id.* at 52–53.

The Court reads *Nacchia* as narrowly construing the term "legally entitled to recover," so that it requires a tort claimant to continue to have a legal entitlement to recover damages against a tortfeasor despite the tender of the full limits of the tortfeasor's liability insurance. The Court further reads *Nacchia* as implicitly overruling *Pacific Insurance Co. v. Higgins,* C.A. No. 11284, 1993 WL 133181 (Del.Ch. April 15, 1993), which Plaintiff relies upon for the proposition that a tort claimant would be "legally entitled to recover" damages under his UIM policy notwithstanding the fact that the claim against the tortfeasor was barred by the statute of limitations. Under *Nacchia,* if the tort claimant can no longer legally proceed against the tortfeasor, then the tort claimant has no further remedy available under a UIM policy. *See also Motorists Mut. Ins. Cos. v. Handlovic,* 23 Ohio St.3d 179, 492 N.E.2d 417, 419 (1986) ("[A]n insured who has obtained a valid judgment against an underinsured motorist generally may not avoid the limits of that judgment when seeking payment under the terms of his underinsured motorist coverage."); *Shevlin v. Prudential Commercial Ins. Co.,* 256 N.J.Super. 691, 607 A.2d 1062, 1068 (Ct.Law Div.1991) (plaintiff who after jury trial obtained damages award barred under doctrine of collateral estoppel from proceeding against insurance carrier pursuant to UIM policy). The Court concludes that the Delaware Supreme Court's interpretation of the term "legally entitled to recover," as discussed by the court in *Nacchia,* requires the application of the doctrine of collateral estoppel in the UIM context of this case.

 Collateral estoppel is available as a defense to a defendant not a party to the first action in which that issue arose when the issue was identical to the issue involved in the prior action, was actually raised and fully litigated in the prior action, and was necessary to the outcome of the valid prior judgment. *David B. Lilly Co. v. Fisher,* 799 F.Supp. 1562, 1566 n. 3 (D.Del.1992) (citing *Neoplan USA Corp. v. Taylor,* 604 F.Supp. 1540, 1546 (D.Del.1985)); *Warren v. Hartford Accident and Indem. Ins. Co.,* C.A. No. 91C–10–013, 1992 WL 423939, at *2 (Del.Super. Dec. 22, 1992); *see also Kelley v. TYK Refractories Co.,* 860 F.2d 1188, 1196 (3d Cir.1988) (citing *Township of McCandless v. McCarthy,* 7 Pa.Cmwlth. 611, 300 A.2d 815, 820–21 (1973)).

In this case, the issue of damages is identical to the issue regarding damages presented in the Delaware Superior Court lawsuit. The damages issue was actually raised and fully litigated, notwithstanding Plaintiff's contention that one of the trial judge's evidentiary rulings was erroneous. If indeed Plaintiff believed the evidentiary ruling was erroneous and significantly affected his damages award, Plaintiff's relief was in another forum. Finally, the Court finds that the issue of damages was necessary to the state court judgment. Thus, under the doctrine of collateral estoppel, Plaintiff can and should be barred from litigating the damages issue again in this Court.

Where a plaintiff proceeds to trial and obtains a conclusive determination with respect to damages, a future defendant, such as an underinsured motorist insurer, has the

option of offensively asserting the doctrine of collateral estoppel, or litigating the issue again. Nothing in the Delaware statute can be found to the contrary. Plaintiff's assertion that the underinsured motorist statute essentially abrogates the doctrine of collateral estoppel by requiring a plaintiff to exhaust the tortfeasor's liability limits is without merit. Obviously, what the Delaware legislature contemplated in requiring that a tort claimant exhaust the tortfeasor's liability limits was that the tort claimant should only be able to recover from the underinsured motorist insurer the damages that may be in excess of the tortfeasor's liability limits.

The Plaintiff in this action has had his day in court. While Plaintiff may not have been satisfied with the decision of the jury, he had the opportunity to litigate all of his possible claims arising from the March 27, 1989 accident.

## VI. *CONCLUSION*

For the reasons discussed, the Court concludes that the underinsured motorist coverage provided for in the subject policies is not available to Plaintiff because the tortfeasor fully satisfied the damage award obtained by Plaintiff in the Delaware Superior Court lawsuit.

Also, the Court concludes that in literally construing the term "legally entitled to recover" the Delaware Supreme Court would find that the doctrine of collateral estoppel applies in this case to bar Plaintiff from litigating the issue of damages a second time through the arbitration procedure for underinsured motorist coverage contained in the relevant insurance policies.

Accordingly, the Court will grant the Motions for Summary Judgment filed by Defendants, and deny Plaintiff's Cross–Motion for Summary Judgment.