NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1123
_____

JAMIE LICHTENSTEIN,
Appellant

v.

UNIVERSITY OF PITTSBURGH MEDICAL CENTER,
trading and doing business as UPMC;
DEBORAH LIDEY; UPMC PRESBYTERIAN SHADYSIDE,
doing business as WESTERN PSYCHIATRIC INSTITUTEAND CLINIC;
UPMC BRADDOCK
_____

On Appeal from the District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-09-cv-01350
(Honorable Joy Flowers Conti)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 18, 2014

Before: AMBRO, SCIRICA, and ROTH, <u>Circuit Judges</u>

(Filed: January 30, 2015)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Jamie Lichtenstein brought suit against the University of Pittsburgh Medical Center ("UPMC"),[1] claiming she had been terminated in violation of her rights under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). The District Court initially granted summary judgment in favor of UPMC, and this Court reversed, finding that there were genuine factual disputes surrounding the circumstances of Lichtenstein's termination. *Lichtenstein v. Univ. of Pittsburgh Med. Cent. (Lichtenstein I)*, 691 F.3d 294, 312 (3d Cir. 2012). On remand and following a jury trial, a verdict was returned in favor of defendants. Lichtenstein appeals the denial of her motion for a new trial under Federal Rule of Civil Procedure 59. We will affirm.

## I.

Lichtenstein began working as a psychiatric technician at UPMC's Braddock Hospital in September 2007 after working for two years as a research associate in another UPMC Clinic. After beginning work at UPMC Braddock, Lichtenstein was tardy at least six times and absent three times: November 13, 2007, December 1, 2007 (a 16-hour shift), and January 3, 2008. Furthermore, she often requested changes to her schedule after the relevant deadline had passed. Lichtenstein was absent on January 3 because her mother was taken to the hospital by ambulance and she was with her in the emergency room. Lichtenstein went to work on January 4, 2008, but her mother remained in the hospital. Her next scheduled shift was January 8, 2008. On the 8th at 3:00 AM, she

---

[1] Our reference to UPMC throughout this opinion, unless otherwise indicated, is a collective reference to all four defendants in this case, including UPMC Presbyterian Shadyside, UPMC Braddock, and Deborah Lidey.

2

"called-off" for the shift, stating she needed to take FMLA leave to care for her mother. She did not go to work but sent an email to Deborah Lidey, her direct supervisor, the afternoon of January 8 inquiring about taking a leave of absence. She was terminated on January 10, 2008, during a phone call with Lidey.

The parties disagree about when the decision to terminate was made. At trial, Lichtenstein contended her January 3 absence—which she claimed to be covered by the FMLA—was the "proverbial 'straw that broke the camel's back.'" UPMC, however, contended the decision was made by December 30, 2007, after a December 1 "call-off"— Lichtenstein later admitted that she submitted a false doctor's note in relation to this absence—and a December 30 incident when Lichtenstein attempted to have her shift rescheduled the previous day, could not, and then arrived two hours late and left three hours early. Lidey also testified at trial that, in addition to the absenteeism, tardiness, and scheduling issues, she also considered poor job performance in her decision to terminate Lichtenstein.

Initially Lichtenstein brought two claims: one for "interference" with her FMLA rights in violation of 29 U.S.C. § 2615(a)(1), and one for "retaliation" in violation of § 2615(a)(2). In pre-trial motions the court dismissed the interference claim as redundant to the retaliation claim and decided the retaliation claim would proceed as a mixed-motive claim.[2] Despite requesting and receiving mixed-motive instructions over UPMC's

---

[2] As we explained in *Lichstenstein I*:

> Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law. Accordingly, claims based on circumstantial evidence have been assessed under the burden-shifting

3

objections in pre-trial motions, Lichtenstein later asked the court to modify the instructions she initially submitted. Before the final charge conference she submitted a request asking the court to include the language applicable to *McDonnell Douglas* cases: that the jury is "entitled to infer, but need not, that the plaintiff's" burden has been met if they "disbelieve the employer's explanation for its decision." *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 280 (3d Cir. 1998). The court, not wanting to convert the mixed-motive instruction into a pretext instruction, included the following additional language:

> You may find that the plaintiff's taking or requesting leave was a negative factor in the defendant's decision to terminate her employment if she has proved that the defendant's stated reasons for its decision are a pretext to hide its decision to terminate her employment because she took or requested FMLA leave. In determining pretext, you may consider whether there are inconsistencies and implausibilities in the defendant's reasons for terminating the plaintiff's employment.

It is this language that Lichtenstein objected to and now challenges.

Lichtenstein appeals the denial of her motion for a new trial on two grounds: (1) that the court erred when it denied her request for specific jury instructions related to an inference of pretext; and (2) that the court erred when it dismissed her claim for

---

["pretext"] framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), while claims based on direct evidence have been assessed under the mixed-motive framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276–77 (1989) (O'Connor, J., concurring). 691 F.3d at 302. Before filing the instant lawsuit, Lichtenstein filed a charge with the Equal Employment Opportunity Commission alleging that her termination violated Title VII of the Civil Rights Act. UPMC submitted a position statement that included Lichtenstein's attendance record—including the January 3, 2008, absence—and Lichtenstein contended that this was direct evidence that the January 3 absence was a "negative factor" in her termination.

interference before trial.

## II.

"Where a party properly objects to a jury instruction under Fed. R. Civ. P. 51, we exercise plenary review to determine whether the instruction misstated the applicable law." *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 338 (3d Cir. 2005). We review the phrasing of the jury instructions for abuse of discretion. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 929 (3d Cir. 1997). Our review of the dismissal of Lichtenstein's interference claim is plenary. *Lomax v. Nationwide Mut. Ins. Co.*, 964 F.2d 1343, 1345 (3d Cir. 1992).[3]

## III.

### A.

It is the responsibility of the trial judge to ensure that the jury instructions "accurately and fairly set[] forth the current status of the law." *Douglas v. Owens*, 50 F.3d 1226, 1233 (3d Cir. 1995). The trial court has broad discretion to compose jury instructions that accurately reflect the law and that are appropriate for the facts of a given case. *Id.* "No litigant has a right to a jury instruction of its choice, or precisely in the manner and words of its own preference." *Id.*

In order to prevail on her retaliation claim Lichtenstein needed to "prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights."

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

*Lichtenstein I*, 691 F.3d at 301-02. In a mixed-motive case,[4] the burden on the plaintiff to prove causation is *lower* than in a pretext case. *Id.* at 302. Once a plaintiff has shown direct evidence that FMLA leave was a negative factor in the termination decision, "'the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered [the FMLA leave].'" *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 147 (3d Cir. 2004) (quoting *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 (3d Cir. 2002)). The employer must "convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276 (1989) (O'Connor, J., concurring).

Aside from the challenged paragraph regarding how the jury may consider "inconsistencies and implausibilities in defendant's reasons for terminating [Lichtenstein]," the jury instructions here came almost entirely from Lichtenstein's proposed mixed-motive jury instructions, which were themselves taken largely from the

---

[4] This case indisputably was presented to the jury as a mixed-motive case. Though the parties submitted briefing about the ongoing availability of mixed-motive claims in FMLA cases in the trial court, the defendants have not challenged the validity of such instructions before this Court. The issue having been effectively waived, we will proceed under a mixed-motive theory. We will continue to save our full analysis of this question for another day, *see Lichtenstein I*, 691 F.3d at 302, but we are satisfied for now that giving a mixed-motive instruction in an FMLA case is not clearly contrary to the Supreme Court's rulings in either *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), or *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013). *See Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 n.11 (5th Cir. 2013); *Hunter v. Valley View Local Sch.*, 579 F.3d 688, 692 (6th Cir. 2009); Brief for the Sec'y of Labor as Amicus Curiae in Support of Plaintiff–Appellant, *Breeden v. Novartis Pharm. Corp.*, 646 F.3d 43 (D.C. Cir. 2011) (Nos. 10–7073; 10–7078).

Third Circuit's Model Civil Jury Instructions, 10.1.2. We can find no error with those instructions, and Lichtenstein does not herself contest them.

As to the challenged language, Lichtenstein makes much of the fact that the court did not state that, if the jury disbelieved Lidey's testimony regarding the reasons for termination, they could "infer" that UPMC's motives were unlawful. In so doing she cites exclusively to sources interpreting the *McDonnell Douglas* framework. Assuming that "you may consider" is materially different from "you may infer," *see Smith v. Borough of Wilkinsburg*, 147 F.3d at 280, that does not answer the question before us: whether the jury instructions properly stated the law under the *Price Waterhouse* framework. *See Watson v. Se. Pennsylvania Transp. Auth.*, 207 F.3d 207, 214 (3d Cir. 2000) ("Our court's cases have recognized two types of disparate treatment employment discrimination actions—'pretext' and 'mixed-motive'—and have applied different standards of causation depending on the type of case the plaintiff presented.").

Under *Price Waterhouse*, all that Lichtenstein had to establish to shift the burden of persuasion to UPMC was that her FMLA leave was used as a "negative factor" in the decision to terminate her employment. *Conoshenti*, 364 F.3d at 147. The instructions clearly stated this. A694 ("Ultimately, you must decide whether the plaintiff's taking or requesting qualified leave was a negative favor in the employment action taken by the defendants – her termination."). As the District Court pointed out, "if there was an error, it would have been including the concept of inconsistencies and implausabilities" *at all* in the mixed-motive jury instructions. But we think that any risk of confusion that might have arisen from the inclusion of these instructions was certainly not fatal. The totality of

the instructions established the key point: that Lichtenstein's burden was to prove that UPMC used her claimed FMLA-qualifying leave on January 3 and/or January 8 as a negative factor in its termination decision. This does not require an instruction that this burden has been *met* if the jury disbelieved Lidey's proffered explanation of the reason for termination, as it would in a pretext case. *See Smith v. Borough of Wilkinsburg*, 147 F.3d at 280. Accordingly, we find that the District Court was within its discretion to include the contested paragraph in the jury instructions, and that its failure to use the exact language requested by Lichtenstein was not error.

**B.**

As for whether the trial court erred in dismissing Lichtenstein's interference claim as redundant to her retaliation claim, we explained in our previous opinion in this case that in order to prevail on an interference claim "Lichtenstein must show (1) she was entitled to take FMLA leave on January 3rd and/or January 8th, and (2) UPMC denied her right to do so." *Lichtenstein I*, 691 F.3d at 312. We went on to state, however, that "[i]t is not clear to us that *Erdman* [*v. Nationwide Ins. Co.*, 582 F.3d 500 (3d Cir. 2009)] necessarily guarantees that plaintiffs have an automatic right to claim interference where, as here, the claim is so clearly redundant to the retaliation claim." *Id.* at n.25. And "we have made it plain that, for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." *Ross v. Gilhuly*, 755 F.3d 185, 192 (3d Cir. 2014) (citing *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005)).

8

Lichtenstein argues that, because the two claims have different standards of proof, she should be allowed to proceed with both. But she also argues throughout that the only way UPMC interfered with her right to take FMLA leave was by using "these absences and/or requests for FMLA leave *as a negative factor* in its decision to termination her employment." Appellants' Br. 38 (emphasis added). She does not claim that any benefits were actually withheld, thereby making her claim distinctly *not* one for interference as we defined such claims in *Ross*. 755 F.3d at 192. As the District Court properly held, the difference in burdens of proof alone will not allow Lichtenstein to go forward with an interference claim that is "in form *and* substance . . . a claim for retaliation." Accordingly it was not error to dismiss the claim for interference before trial.

**IV.**

We see no error with the rulings of the District Court; therefore we will affirm its judgment.