**Todd MILLER and Victoria Miller, Plaintiffs Below, Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant Below, Appellee.**

No. 570, 2009.

Supreme Court of Delaware.

Submitted: March 3, 2010.
Decided: April 21, 2010.

Robert K. Beste, III, Esquire, of Smith, Katzenstein & Furlow, LLP, Wilmington, DE, for Appellants.

Donald M. Ransom and Joshua H. Meyeroff, Esquires, of Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, DE, for Appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

JACOBS, Justice:

Todd Miller ("Miller") and his wife—Victoria Miller, the plaintiffs, appeal from two Superior Court orders denying their motions to exclude evidence in a personal injury action in which State Farm Mutual Automobile Insurance Company ("State Farm"), Millers' underinsured motorist carrier, was a codefendant. On appeal, the Millers claim that the Superior Court erred by admitting evidence, in violation of the collateral source rule, that Miller had received workers' compensation benefits and had entered into a settlement with his employer's workers' compensation carrier (the "WC Carrier"). We reverse the judgment of the Superior Court and remand for a new trial.

## FACTS

On March 11, 2005, Miller, while driving a car owned by his employer, was struck by a car operated by Jennifer King ("King"). Because Miller was working when the accident occurred, the WC Carrier paid most of his medical expenses.

The Millers filed a Superior Court action against two defendants: King for personal injuries and loss of consortium, and State Farm for underinsured motorist coverage under the Millers' State Farm automobile

insurance policy.[1] Under 19 *Del. C.* § 2363(e), the WC Carrier was entitled to be reimbursed from any amounts recovered by the Millers in their action against King.[2]

Before trial, King's insurance carrier paid Miller the bodily injury liability coverage limit under King's policy ($50,000) in settlement of Miller's claims against King.[3] Contemporaneously, Miller entered into a settlement with the WC Carrier, in which: (1) the WC Carrier accepted $24,000 of the $50,000 settlement proceeds in satisfaction of its reimbursement right; and (2) Miller released the WC Carrier from all claims arising out of the accident. That left only the Millers' action against State Farm for underinsured motorist coverage, which went to trial.

On November 24, 2008, the Millers filed a motion *in limine* to exclude from evidence any reference to Miller having received workers' compensation benefits, in-cluding the fact that Miller was working at the time of the accident. Miller argued that admission of that evidence was precluded by the collateral source rule.[4] The Superior Court denied the motion by order dated January 27, 2009, which stated that "[t]he Court shall advise the jury of the workers comp. benefits and plaintiff's legal obligation to repay them from any verdict, consistent with *Spencer v. Wal–Mart Stores East, LP.*" [5]

On February 2, 2009, the Millers moved for reargument. On April 1, 2009, the Superior Court ruled that "[a]fter considering the authorities submitted by the parties, including *State Farm Mutual Automobile Insurance Company v. Nalbone*[6] ... the Court will instruct the jury that the plaintiff received workers compensation benefits, the carrier asserted a lien, and that lien was satisfied for approximately $24,000." Accordingly, during the trial, State Farm mentioned Miller's settle-

---

1. King's insurance bodily injury liability limit was $50,000. The Millers' auto insurance policy, written by State Farm, provided for $100,000 in underinsured motorist coverage. King's car was an "underinsured motor vehicle," as defined in 18 *Del. C.* § 3902(b)(2).

2. 19 *Del. C.* § 2363(e) ("Any recovery against the third party for damages resulting from personal injuries ... shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid ... under the Workers' Compensation Act to date of recovery."); *see also Adams v. Delmarva Power & Light Co.*, 575 A.2d 1103, 1107 (Del. 1990) (holding that underinsured motorist insurance may preclude its applicability to claims made by workmen's compensation carriers). The Millers' insurance policy excludes underinsured motorist coverage "to the extent it benefits ... any workers compensation ... insurance company."

3. King was subsequently dismissed from the action.

4. The collateral source rule provides that a tortfeasor has no right to any mitigation of damages because of payments or compensa-tion received by the injured person from an independent source. *Yarrington v. Thornburg*, 205 A.2d 1, 2 (Del.1964).

5. In *Spencer v. Wal–Mart Stores East, LP*, 930 A.2d 881, 887 (Del.2007) this Court upheld an instruction informing the jury that plaintiff had received workers' compensation benefits and that her workers' compensation carrier asserted a lien on any amount recovered.

6. In *State Farm Mut. Auto. Ins. Co. v. Nalbone*, 569 A.2d 71 (Del.1989), this Court held that an insured may not recover "net wages lost" pursuant to 21 *Del. C.* § 2118 as personal injury protection (PIP) benefits, if the insured has received reimbursement for such losses under a wage continuation plan (a collateral source), except where the collateral source was supported by consideration or a detriment to the insured. Two Justices dissented, arguing that the statutory obligation of the PIP insurer to compensate the insured for lost wages is independent of the insured's right to collect from a collateral source. *Id.* at 78.

ment with the WC Carrier repeatedly before the jury.

During the trial, State Farm did not contest King's underlying liability.[7] State Farm disputed only the damages (if any) that Miller should be entitled to recover.[8] Specifically, State Farm contended that the medical treatments Miller had received (most of which his WC Carrier paid for), were not "reasonable and necessary." The Superior Court instructed the jury as follows:

> Medical bills have been submitted in evidence totaling $73,707.35. Mr. Miller's workers' compensation carrier paid $71,893.07, a difference of $1,814.28. Mr. Miller paid the workers' compensation carrier the sum of $24,000. State Farm does not agree that the bills in evidence were for reasonably necessary medical treatment. You may award Todd Miller the amount of the medical bills if you find those bills reflecting the medical treatment of Mr. Miller were reasonable and necessary.

The jury awarded no ($0) damages to the Millers. This appeal followed.[9]

## ANALYSIS

On appeal, the Millers claim that the Superior Court erred by admitting into evidence the fact that Miller had received workers' compensation benefits. The Millers claim that that evidentiary ruling violated the collateral source rule, under which "a tortfeasor has no right to any mitigation of damages because of payments or compensation received by the injured person from an independent source."[10] The Millers argue that State Farm, which was "standing in the shoes" of the tortfeasor (King), should not be permitted to benefit from the jury being told that, because of his settlement with the WC Carrier, Miller had no further obligation to repay the WC Carrier and would retain any damages that the jury awarded.

State Farm responds that under *State Farm v. Nalbone*,[11] Miller was not entitled to a double recovery. Put differently, State Farm contends that the collateral source rule does not apply to claims to recover under the underinsured motorist provision of an automobile insurance policy. State Farm also argues that it should not be treated as if it were the tortfeasor (here, King) for purposes of applying the collateral source rule. Finally, State Farm urges that any error in admitting collateral source evidence was harmless, because the Superior Court's jury instructions, which were consistent with *Spencer v. Wal–Mart Stores East, LP*,[12] eliminated any potential jury confusion over double recovery.

### I. Standard of Review

■ This Court reviews a trial judge's decision to admit or exclude evidence for

7. A condition precedent to an insured's eligibility for underinsured motorist benefits is that the insured be "legally entitled to recover" damages from the underinsured tortfeasor. 18 *Del. C.* § 3902(b)(1); *Nationwide Mut. Ins. Co. v. Nacchia*, 628 A.2d 48 (Del. 1993).

8. The parties agreed that the jury "would simply determine a damage amount" and the Superior Court "would apply the policy as a matter of law."

9. On September 1, 2009 the Superior Court denied the Millers' motion for a new trial.

10. *Yarrington*, 205 A.2d at 2.

11. *Nalbone*, 569 A.2d 71. *See supra* note 6.

12. *Spencer*, 930 A.2d at 887. *See supra* note 5.

abuse of discretion.[13] The applicability of the collateral source rule, however, is a question of law that we review *de novo*.[14] Accordingly, we review *de novo* the Superior Court's decision to admit or exclude evidence premised upon a determination, as a matter of law, that the collateral source rule is inapplicable.[15]

## II. The Collateral Source Rule

 The collateral source rule is "firmly embedded" in Delaware law.[16] It provides that "a person deemed legally responsible to another cannot claim the benefit of the ability of the injured party to recover[ ] from a third party expenses related to [the] injury."[17] Therefore, the rule "prohibits the admission of evidence of an injured party receiving compensation or payment for tort-related injuries from a source other than the tortfeasor."[18] The rule has two underlying rationales. The first is that "a tortfeasor has no interest in ... monies received by the injured person from sources unconnected with the defendant."[19] The second, which is particularly relevant here, is "a concern for prejudice that may result to an injured party in the minds of the jury from knowledge of any 'double recovery.'"[20]

 The issue before us—whether the collateral source rule applies in the underinsured motorist context—is of first impression. We conclude that that issue must be answered in the affirmative. The collateral source—here, Miller's WC Carrier—had no connection to the defendant, State Farm. The State Farm insurance policy was purchased and paid for by the Millers, whereas Miller's workers' compensation insurance was paid for by his employer. Because State Farm contributed nothing to the fund that created the collateral source and had no interest in that fund, State Farm should not have been allowed to benefit from it. That Miller's action is based upon a contract (the State Farm insurance policy), or that State Farm was not the actual tortfeasor, do not alter that conclusion. Under the underinsured motorist provision of the insurance contract between the Millers and State Farm, State Farm was required to pay Miller whatever damages that Miller was "legally entitled to recover" from King. That is, State Farm's contractual obligation to pay the Millers derived from King's liability in tort.[21] Under the collateral source rule (which clearly applied to Miller's separate claim against King), Miller's entitlement to recover from King

13. *Id.* at 886.

14. *Sears, Roebuck & Co. v. Midcap*, 893 A.2d 542, 552 (Del.2006) ("This Court reviews questions of law, including the application of the collateral source rule, *de novo.*").

15. *Id.*; *Secrest v. State*, 679 A.2d 58, 61 (Del. 1996) (holding that although motions *in limine* are reviewed for abuse of discretion, the Superior Court's application of an interpretation of the statute to undisputed facts when deciding a motion *in limine*, is subject to *de novo* review).

16. *Yarrington*, 205 A.2d at 2.

17. *Guy J. Johnson Transp. Co. v. Dunkle*, 541 A.2d 551, 553 (Del.1988).

18. *James v. Glazer*, 570 A.2d 1150, 1155 (Del. 1990). An exception to the inadmissibility of collateral source evidence exists where the injured party raises the issue during his or her own direct examination. *Id.* Here, however, the Millers attempted to exclude the collateral source evidence well in advance of the trial.

19. *Yarrington*, 205 A.2d at 2.

20. *James*, 570 A.2d at 1155.

21. 18 *Del. C.* § 3902. *See also Rapposelli v. State Farm Mut. Auto. Ins. Co.*, 988 A.2d 425 (Del.2010).

would not have been diminished by payments he received from a collateral source. Consequently, State Farm's derivative contractual obligation to Miller should likewise have been unaffected by the collateral source payments.[22]

Because the Superior Court, in concluding otherwise, relied on *Nalbone v. State Farm*,[23] we must address the impact of *Nalbone* on actions to recover underinsured motorist proceeds. In *Nalbone*, this Court interpreted the Delaware No–Fault Statute[24] as precluding an insured from recovering Personal Injury Protection (PIP) benefits as compensation for wage losses to the extent those losses had already been satisfied by a collateral source—*unless* the collateral source payments were supported by actual consideration or by some detriment to the insured.[25] That is, under *Nalbone* "the collateral source rule applies in the no-fault insurance context only to the extent that the plaintiff has paid consideration or sustained some detriment for the payments from the collateral source; collateral payments received *gratis* bar a double recovery."[26] Because Nalbone's wage losses were recovered under her employer's non-contributory wage continuation plan, we held that Nalbone could not recover those losses (again) from State Farm, in the form of PIP benefits.

State Farm (and the Superior Court) read *Nalbone* as applying to all contract actions where the plaintiff seeks a double recovery of damages, including underinsured motorist cases. That reading is overbroad.[27] Our ruling in *Nalbone* was limited to the no-fault insurance context.[28]

---

22. In *Rapposelli*, 988 A.2d at 429, we held that the determination of damages in an underinsured motorist action is based on the insured's entitlement to recover from the wrongdoer, and, therefore, is governed by tort law. The body of tort law includes the "firmly embedded" collateral source rule, which holds that the tort principle that a wrongdoer is liable for all damages that proximately result from his wrong, takes precedence over the principle that a victim of a wrong is entitled to compensation sufficient to make him whole, but no more. *See Mitchell v. Haldar*, 883 A.2d 32, 38 (Del.2005). State Farm argues that because as an underinsured motorist coverage carrier its liability "sounds in contract" rather than in tort, precedence should be given to the latter principle, which disfavors a double recovery by the victim. That argument is oxymoronic: if we were to treat Miller's underinsured motorist claim as completely contractual, State Farm would not be able to argue that Miller's expenses were not "reasonable and necessary" *results* of the accident. *See Rapposelli*, 988 A.2d at 429 ("State Farm conceded the underinsured's negligence, the tortfeasor's tender of her bodily injury limits, and Rapposelli's entitlement to underinsured motorist coverage. State Farm only contested compensatory damages arising from the accident—a contention only a proceeding in tort could solve.").

23. The Superior Court's Order dated April 1, 2009 states that "[a]fter considering the authorities submitted by the parties, including *State Farm Mutual Automobile Insurance Company v. Nalbone*, 569 A.2d 71, 72 (Del. 1989), the Court will instruct the jury that the plaintiff received workers compensation benefits, the carrier asserted a lien, and that lien was satisfied for approximately $24,000."

24. 21 *Del. C.* § 2118 (titled: "Requirement of insurance for all motor vehicles required to be registered in this State; penalty.").

25. *Nalbone*, 569 A.2d at 76.

26. *Lomax v. Nationwide Mut. Ins. Co.*, 964 F.2d 1343, 1345 (3d. Cir.1992) (applying Delaware law).

27. As explained above, State Farm incorrectly classifies underinsured motorist claims as "purely" contractual. *See* note 22 *supra*.

28. *Nalbone*, 569 A.2d at 72 ("The question before us is essentially one of statutory interpretation [of § 2118].... We ... approach the question from the standpoint of the primary policy considerations underlying the Delaware No–Fault Statute...."); *Id.* at 75 ("The acknowledged no-fault goal of full and

*Nalbone* does not reach fault-based scenarios, including actions to recover underinsured motorist benefits.

■ In *Nalbone* we accepted certification of a legal question that required us to interpret the statutory term "net amount of lost earnings." [29] The applicable statute carved out a limited exception to the collateral source rule in no-fault insurance claims (*i.e.*, claims based on 21 *Del. C.* § 2118), because "the policy goals of no-fault insurance can best be served by application of principles of contract rather than tort law." [30] Here, however, the determination of the insured's damages in an underinsured motorist claim is governed not by contract principles, but by tort law—which includes the "firmly embedded" collateral source rule.[31] 18 *Del. C.*

§ 3902—the statute that governs underinsured motorist coverage, has no legislative provision that eliminates or modifies the collateral source rule.[32] Nor do the policy considerations underlying the Delaware underinsured motorist coverage regime support State Farm's argued-for limitation of the collateral source rule.[33] In cases involving underinsured motorist benefits, public policy supports applying the rule, because that will encourage motorists to purchase underinsured motorist coverage.[34] Unlike no-fault insurance, underinsured motorist coverage is not compulsory,[35] but supplemental in nature.[36] The public policy underlying 18 *Del. C.* § 3902 is to *permit* an insured as a "rational and informed consumer"—to contract for supplemental insurance protecting him from an irresponsible driver who causes death

speedy recovery of special damages ... is not advanced by permitting double recovery....""). *See also Ameer–Bey v. Liberty Mut. Fire Ins.*, 2003 WL 1847291, at *4 (Del.Super.Ct. Apr.7, 2003) (holding that *Nalbone* is "confined by the facts of that case to a 'no-fault' context."); *Calvarese v. State Farm Mut. Ins. Co.*, 2003 WL 1847355, at *3 (Del.Super.Ct. Apr.7, 2003) (holding that *Nalbone* has no direct application in the underinsured motorist context and is limited to the no-fault situation). *See also Schulze v. Sate Farm Mut. Auto. Ins. Co.*, 2009 WL 1638609 (Del.Super.Ct. Apr.2, 2009) (declining to extend *Nalbone* within the no-fault context, and rejecting State Farm's general "lost nothing—get nothing" argument).

**29.** 21 *Del. C.* § 2118(a)(2) requires that an owner of a motor vehicle have insurance covering, *inter alia*, an injured person's "net amount of lost earnings."

**30.** *Nalbone*, 569 A.2d at 75.

**31.** *Rapposelli*, 988 A.2d at 428–29 ("contract law governs *only* those aspects of the underinsured motorist claim that are not controlled by the resolution of facts arising from the accident.") (emphasis added).

**32.** *Estate of Farrell ex rel. Bennett v. Gordon*, 770 A.2d 517, 520 (Del.2001) (holding that

absent specific legislative direction we "are not free to impose limits on recovery, or dilute the force of the collateral source rule."); *Nalbone*, 569 A.2d at 73 (noting that several states have directly modified the collateral source rule by enacting statutes that limit the extent of double recovery or windfall results).

**33.** *Nalbone*, 569 A.2d at 72 (stating that because "recourse to the statute itself provides little insight into the legislative purpose concerning the certified question ... [w]e thus approach the question from the standpoint of primary policy considerations underlying the Delaware No–Fault Statute").

**34.** *Lomax*, 964 F.2d at 1347. In *Lomax*, the Third Circuit addressed the same issue raised here—whether under Delaware law the collateral source rule applies to uninsured motorist claims. The Third Circuit correctly predicted that this Court would answer that question in the affirmative. *Id.* at 1348.

**35.** 18 *Del. C.* § 3902(b) ("Every insurer shall offer the insured the option to purchase" underinsured motorist coverage.)

**36.** *Adams*, 575 A.2d at 1107.

or injury.[37] In that sense, the underinsured motorist carrier—not the WC Carrier—*was the collateral source* for which the insured paid independent consideration.[38] Restricting a double recovery in underinsured motorist cases would frustrate the reasonable expectations of the insured (created by the payment of insurance premiums) to recover under the policy,[39] and thereby would defeat the General Assembly's purpose in enacting Section 3902. That result also would contravene *Nalbone's* explicit holding that "the extent to which the collateral source rule should be applied to permit double recovery *should depend upon the contractual expectations*" of the insured to recover from a source for which he has paid.[40]

We therefore conclude that the Superior Court erred as a matter of law by failing to apply the collateral source rule, which required excluding all evidence of Miller's workers' compensation benefits.[41] That brings us to the final question, which is whether or not that error was harmless.[42]

### III. Prejudice

■ Although State Farm was allowed to introduce collateral source evidence at trial, before the jury began its deliberations, the Superior Court instructed the jury that they "may award Todd Miller the amount of the medical bills if [they] find those bills reflecting the medical treatment of Mr. Miller were reasonable and necessary." That instruction, State Farm claims, rendered harmless any error by the Superior Court, because it informed the jury that Miller was entitled to a double recovery. State Farm argues that the jury's zero ($0) damages verdict was based solely on the jury's determination that Miller's medical expenses were not "reasonable and necessary." That is possible. But, it is equally possible that the verdict flowed from the jury's reluctance to award Miller a double recovery. That is so, because the instruction did not *explicitly* inform the jury that Miller was *legitimately entitled* to seek a double recovery.

The Superior Court opined that its jury instruction was consistent with *Spencer v.*

---

**37.** *Id.*

**38.** Here, the WC Carrier resembles the no-fault insurance carrier because workers' compensation is the exclusive remedy for personal injury by accident "arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies." 19 *Del. C.* § 2304. Where the employee personally pays for underinsured motorist coverage, he creates—by contract—an additional fund to protect himself and his family. *See Adams,* 575 A.2d at 1107 (holding that "[t]he language of Adams' underinsured motorist coverage, precluding its applicability to claims made by workmen's compensation carriers, promotes that public policy *by preventing a diminution in the additional fund* which Adams sought, by contract, to provide as protection for himself and his family.") (emphasis added).

**39.** *Ameer–Bey,* 2003 WL 1847291, at *5; *Nalbone,* 569 A.2d at 75 ("There is no reason why a risk-averse insured should not be permitted

to contract for a double recovery ... if an injury occurs he should be permitted, as a matter of contract law, to receive a double recovery since that is what he had paid for.").

**40.** *Nalbone,* 569 A.2d at 75.

**41.** Because the *Nalbone* holding did not apply here (or alternatively, because under the circumstances the consideration supporting the collateral source was Miller's payment of the insurance premium to State Farm), we need not address Miller's argument that he had incurred a detriment by entering the settlement with the WC Carrier. We note, however, that under *Nalbone,* "the detriment of loss of future availability" of the collateral source is sufficient to permit a double recovery. *Id.* at 75.

**42.** *Mitchell,* 883 A.2d at 40.

*Wal–Mart.*[43] In *Spencer* this Court upheld a jury instruction "designed to inform the jury that if it finds for the plaintiff, it should award the full amount of [damages] that it finds to exist by a preponderance of evidence, without deducting any amount paid by workers' compensation."[44] We upheld the instruction in *Spencer* because "there was a significant risk that evidence that Spencer had received workers compensation could mislead the jury to conclude that Spencer was seeking double recovery," to which she was not entitled.[45] But here, Miller was entitled to a double recovery. Moreover, the *Spencer* instruction explicitly required the jury *not to consider* the fact that some of the plaintiff's losses had been paid by her workers' compensation carrier. Here, the jury was not told what it should not consider. Rather, the jury was instructed only to determine whether Miller's expenses were "reasonable and necessary." Finally, the Superior Court's reliance on *Spencer* was misplaced, because in *Spencer* we ultimately determined that no prejudice resulted to the plaintiff because the jury found no liability on the part of defendant; therefore, the *Spencer* jury never reached the damages issue.[46] Here, however, liability was conceded, and the only issue to be determined by the jury was the amount of Miller's damages. Therefore, the Superior Court's erroneous admission of the collateral source evidence materially prejudiced the Millers and was not harmless.

43. 930 A.2d at 887.

44. *Id.* The instruction read as follows:
You have heard testimony about the workers' compensation benefits that [the plaintiff] has received. You should not consider the fact that some of the medical expenses and lost wages that he claims in this lawsuit have been paid through workers' compensation because [the plaintiff] has a legal obligation to repay this compensation from any money that you might award in this

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the Superior Court and remand this case for a new trial.

case. On the other hand, if he does not recover in this case, there is no obligation for [the plaintiff] to reimburse.

45. *Id.* Indeed, in *Spencer* we held that the collateral source rule was inapplicable because Spencer had not settled with her workers' compensation carrier and had a legal obligation to repay any award to that carrier.

