**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| LOTOYA D. CHRISTIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N23C-07-198 FWW |
| | ) | |
| KYHEIM L. PORTER, JOHN A. | ) | |
| JOYCE, JERMAINE N. CLARKE, | ) | |
| and STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: September 13, 2024
Decided: November 22, 2024

*Upon the Motion for Summary Judgment of Defendants John A. Joyce and Kyheim L. Porter*,
**DENIED.**

## ORDER

Gary S. Nitsche, Esquire, Rachel D. Allen, Esquire, NITCHE & FREDRICKS, LLC, 305 N. Union Street, Second Floor, Wilmington, DE 19899, Attorneys for Latoya D. Christie.

David G. Culley, Esquire, TYBOUT, REDFEARN & PELL, Rockwood Office Park, 501 Carr Road, Suite 300, Wilmington DE 19809, Attorney for Defendant Jermaine N. Clarke.

Daniel P. Bennett, Esquire, MINTZER SAROWITZ ZERIS & WILLIS LLC, Citizens Bank Center, 919 North Market Street, Suite 200, Wilmington, DE 19801, Attorney for Defendant John A Joyce.

Erin K. Radulski, Esquire, LAW OFFICE OF DAWN L. BECKER, 200 Continental Drive, Newark, DE 19713, Attorney for Defendant Kyheim L. Porter.

Jeffrey A. Young, Esquire, YOUNG & McNELIS, 300 South State Street, Dover, DE 19901, Attorney for Defendant State Farm Mutual Automobile Insurance Company.

**WHARTON, J.**

This 22nd day of November 2024, upon consideration of the joint Motion for Summary Judgment of Defendants John A. Joyce ("Joyce") and Kyheim L. Porter ("Porter")[1] (collectively "Movants"), Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Response,[2] Defendant Jermaine Clarke's ("Clarke") letter response taking no position,[3] Plaintiff Lotoya D. Christie's ("Christie") Response,[4] Movant's Reply,[5] and the record in this case, it appears to the Court that:

1.     On May 8, 2022, Clarke was operating a motor vehicle proceeding southbound on I-95 near Newport, Delaware with Christie as a passenger.[6] Joyce's vehicle and Porter's vehicle were both parked near the Newport exit after being involved in an accident.[7] Christie alleges personal injuries from a collision that occurred between Clarke's vehicle and Joyce's parked vehicle.[8]

2.     At the time of the collision, Clarke held a motor vehicle insurance policy with State Farm.[9] On August 11, 2023, State Farm paid Christie the maximum

---

[1] Mot. for Summ. J., D.I. 37.
[2] State Farm's Resp., D.I. 42.
[3] Clarke's Resp., D.I. 39.
[4] Christie's Resp., D.I. 45.
[5] Movants' Reply, D.I. 49.
[6] Am. Compl. ¶ 6, D.I. 13.
[7] *Id*. ¶ 7.
[8] *Id*. ¶ 7, 11.
[9] *See* Mot. for Summ. J. at Ex. D, D.I. 37.

liability benefits under Clarke' policy and Christie executed a release in favor of

Clarke ("Release") stating:

> For and in consideration of the sum of twenty five thousand and 00/00- Dollars, Lotoya Christie hereby fully and forever release[s] and discharge[s] Jermaine Clarke, who does not admit any liability to the undersigned but expressly denies any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries known and unknown, which have resulted or may in the future develop from an incident on or about the 8th day of May, 2022, at or near I95, Newark, DE.
>
> The undersigned agrees to be responsible for and to satisfy out of the proceeds of this settlement, any and all liens, known and unknown, and/or subrogated interests, for medical treatment, health care and related expenses, and attorney's fees, incurred by, or on behalf of the undersigned, for any bodily injury arising from the accident described herein above. A Delaware Personal Injury Protection subrogation claim is not released where the tortfeasor knows of or has been placed on notice of the subrogation interest.
>
> The undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, known or unknown, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the incident described above.[10]

---

[10] *Id*. at Ex. C.

3. Separate text at the bottom of the Release states: "Plaintiff specifically reserves any claims for UM/UIM and PIP benefits against any entity, including any insurance company identified herein."[11] On September 11, 2023, State Farm advised Christie's counsel that it was accepting her claim for underinsured motorist benefits, and it enclosed payment of $25,000.[12] Christie's counsel accepted this payment on her behalf.[13]

4. Joyce and Porter moved for Summary Judgment on July 31, 2024.[14] State Farm responded supporting the motion.[15] Christie responded opposing the motion.[16] Clarke took no position.[17] Joyce and Porter replied on September 13, 2024.[18]

5. In moving for summary judgment, Joyce and Porter assert that Christie continues to impermissibly pursue claims against them despite receiving both the liability limits and underinsured motorist benefit limits from State Farm.[19] Movants cite 18 *Del. C.* § 3902(b)(3) contending the exhaustion of all limits of all liability

---

[11] *Id.*
[12] *Id*. at Ex. D.
[13] *Id*. at Ex. E.
[14] Mot. for Summ. J., D.I. 37.
[15] State Farm's Resp., D.I. 42.
[16] Christie's Resp., D.I. 45.
[17] Clarke's Resp., D.I. 39.
[18] Movants' Reply, D.I. 49.
[19] Mot. for Summ. J. at ¶ 4, D.I. 37.

policies is necessary to obtain underinsured motorist benefits.[20] Movants argue that it must be assumed that State Farm's payment of liability limits in the amount of $25,000 to Christie exhausted of all available limits in order for her to have been eligible to receive underinsured motorist benefits.[21] "Otherwise, State Farm would have had no obligation to pay an additional $25,000 in underinsured motorist benefits based upon the circumstances in this case."[22] Further, "State Farm's payment of the underinsured motorist benefits cannot be deemed gratuitous, even if made voluntarily, but must be assumed that it was made pursuant to the statute."[23]

6. Additionally, Movants assert that "[i]n addition to State Farm's payment having to be deemed made in accordance with 18 *Del. C.* § 3902(b)(3), Plaintiff's acceptance and cashing of such monies demonstrates an agreement that such benefits were paid pursuant to 18 *Del. C.* § 3902(b)(3)."[24] Movants argue that Plaintiff has implicitly agreed through the acceptance of underinsured motorist benefits that Clarke is solely responsible for the accident, and that no cause of action should exist against the other Defendants.[25]

---

[20] *Id.* ¶¶ 6-7.
[21] *Id.* ¶ 8.
[22] *Id.*
[23] *Id.*
[24] *Id.* ¶ 9.
[25] *Id.*

7. Movants anticipate Christie arguing she is willing to provide a credit to the other Defendants for the amounts previously received from State Farm.[26] Movants argue, however, that this anticipated position has no basis in statutory or case law.[27] Ultimately, Christie chose to resolve her claim against Clarke and to accept underinsured motorist benefits from State Farm, resulting in the full and complete resolution of her claim.[28] Therefore, Movants contend that Christie is precluded from pursuing claims against them.[29]

8. For its part, State Farm contends Christie cannot both accept underinsured motorist benefits and continue to assert additional liability claims against Movants.[30] State Farm argues that 18 *Del. C.* § 3902(b)(3) makes a plaintiff ineligible for underinsured motorist benefits until after the limits of liability have been exhausted.[31] Therefore, Christie is statutorily barred from accepting or even making a claim for underinsured motorist benefits if she asserts that there are other liable parties from the accident that have available liability coverage for which she is also making a claim.[32]

---

[26] *Id.* ¶ 10
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] State Farm's Resp. ¶ 1, D.I. 42.
[31] *Id.*
[32] *Id.*

9.      State Farm also asserts that its tender of Christie's underinsured motorist benefit policy limits "was made based on the assumption (if not representation) that no other liability coverage remained applicable to the case."[33] And, that her "acceptance of that tender would necessarily indicate her own belief consistent with that statutory requirement."[34] State Farm contends Christie cannot assert an underinsured motorist claim in advance of the resolution of other related liability claims.[35] Further, depending upon Joyce's and/or Porter's liability, State Farm argues that there may be no viable underinsured claim at all.[36] In State Farm's view "Plaintiff is left with the choice of pursuing the remaining alleged tortfeasors and returning to State Farm the $25,000 paid pursuant to the Plaintiff's underinsured motorist coverage, or dismissing the balance of the case as a recognition that there are no other liable parties."[37]

10.     In her Response, Christie provides a chronology of events:

> The Clarke vehicle was insured by Defendant State Farm. In June 2023, State Farm on behalf of Clarke offered to tender the policy limits of $25,000 to resolve the claim against Clarke. Plaintiff requested on multiple occasions an Affidavit of No Additional Insurance, before Plaintiff could agree to that settlement. As the affidavit had not been provided, Plaintiff filed the present lawsuit which had claims against Porter, Joyce, and Clarke. Upon receipt

---

[33] *Id.* ¶ 2.
[34] *Id.*
[35] *Id.* ¶ 3.
[36] *Id.*
[37] *Id.*

of the affidavit, Plaintiff was able to accept the settlement offer on behalf of Clarke and executed a release for the same. The release was specifically limited to Clarke, and did not release any other entity. Plaintiff then added State Farm to the pending litigation, so that if a fact finder found that Clarke's portion of damages exceeded his liability limits, State Farm would stand in Clarke's shoes for underinsured motorist benefits ("UIM"). This Amended Complaint was filed before State Farm made any offers on the UIM coverage.

On September 11, 2023, State Farm, sent Plaintiff's counsel a payment of $25,000, stating that it was paying this based upon the information it had to date. As noted at the bottom of the page, State Farm was aware that there were claims against the other drivers being made at the time of the letter and yet State Farm did not condition the payment of the UIM benefits on withdrawal of those claims. Further, nothing in the letter states that the payment is for full and complete settlement of the claim, nor is there any request for a release. Instead, the letter invites additional information and documentation from Plaintiff.[38]

11. Christie argues that "[w]hen considering the facts in the light most favorable to Plaintiff, it is possible that a jury could find that Clarke's portion of Plaintiff's damages exceed Clarke's insurance policy and still find Joyce and Porter are also proportionally responsible but to a lesser amount."[39] Further, "[i]f that were the case, Plaintiff would obtain recovery from Clarke, Clarke's UIM, Porter, and Joyce."[40] Additionally, she argues that the underinsured motorist statute must be

---

[38] Christie's Resp. ¶¶ 3-4 (internal citations omitted), D.I. 45.
[39] *Id*. ¶ 5.
[40] *Id*.

9

read in its entirety as 18 *Del. C.* § 3902(b)(4) specifically allows a plaintiff to settle with one tortfeasor and still pursue claims against others.[41] She argues the Court in *Townshend v. Liberty Mutual Insurance Co.*[42] noted the legislature amended 18 *Del. C.* § 3902(b) by adding subsection (b)(4) to include a provision regarding multiple tortfeasors.[43] Christie argues that under this statute, Joyce and Porter remain jointly and severally liable for her injuries, and any settlement with Clarke does not extinguish her claims against them.[44]

12. Christie adds that there has been not been a determination of the parties' respective degrees of responsibility, nor has there been a determination regarding the extent of Christie's damages.[45] Christie asserts that when considering the facts in the light most favorable to her, a fact finder could find that her damages exceed the available insurance coverage.[46] Moreover, State Farm's decision to pay UIM benefits does not signify that she has been fully compensated for her injuries.[47] And, Joyce and Porter still remain liable for their portion of any remaining damages as

---

[41] *Id.* ¶ 6.
[42] 1998 WL 281265 (Del. Super. Ct. May 22, 1998).
[43] Christie's Resp. ¶ 6, D.I. 45
[44] *Id.* ¶ 7.
[45] *Id.* ¶ 8.
[46] *Id.*
[47] *Id.*

allowed under 18 *Del. C.* § 3902(b)(4).[48]   Christie contends that State Farm's

Response reads like a Motion for Summary Judgment, and writes:

> State Farm asserts that it was under the assumption when it tendered its UIM policy limits that all coverage had been exhausted, when State Farm's own letter demonstrates that it was aware that there were other pending claims, did not know if the lawsuits had been withdrawn, and was still tendering its limits. State Farm, nowhere in its correspondence suggested, implied, or required that the pending claims with Joyce and Porter be withdrawn in order to obtain the UIM payment. Further, it should be noted that State Farm often advances what it believes is owed in UIM matters, and still allows for continued negotiation or litigation. Nothing in State Farm's letter indicated that the payment would be for full and final settlement of the entire matter. At the very least the statement at the bottom of State Farm's letter creates a factual question that will need deposition testimony from the author of the letter.[49]

13. Christie summarizes that "Delaware law specifically creates the ability

for Plaintiff to execute a release for one of multiple tortfeasors and then that

tortfeasor and UIM will be considered against the remaining tortfeasors under the

Joint Tortfeasor Act."[50]   Further, "[t]he proper course of action at this time is to allow

a factfinder to assess the total damages, asses the portions of liability, and then if

there is a need for credits or offset, they can be made at that time."[51]

---

[48] *Id.*
[49] *Id.* ¶ 9.
[50] *Id.* ¶ 11
[51] *Id.*

14. In their Reply, Movants first point out that they do not challenge Christie's ability to resolve her case against Clarke, and support her ability to do so.[52] However, they contend that her acceptance of UIM benefits from State Farm is directly contrary to statutory law, as is Christie's continued pursuit of claims against Movants.[53] Movants assert that Christie's intent in pursuing UIM benefits is at issue, and the intent of State Farm in tendering its UIM limits is not at issue.[54] Additionally, on this point, Movants contend that it is clear that Christie was accepting the tender of State Farm's underinsured motorist limits.[55] And, in order to do so, she cannot accept such limits unless she has already exhausted all other underlying limits from all other tortfeasors in accordance with 18 *Del. C.* § 3902(b)(3).[56]

15. Secondly, Movants reply that Christie's reliance on 18 *Del. C.* § 3902(b)(4) is misplaced.[57] In consideration of *Townshend* and the legislature's addition of subsection (b)(4) after the Delaware Supreme Court's prior ruling in *Nationwide Mut. Ins. Co. v. Nacchia*,[58] Movants argue that it is now clear that a reservation of rights need not have been present in the Release in order to pursue an

---

[52] Joyce and Porter's Reply ¶ 2, D.I. 49.
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.* ¶ 3.
[58] 628 A.2d 48 (Del. 1993).

underinsured action.[59] Still, they add that this portion of the statute does not address the present situation where a plaintiff continues to pursue other tortfeasors after already accepting underinsured motorist benefits.[60]

16. Next, Movants point out that "§ 3902(b)(4) refers back to (b)(3), meaning the parties have to act in accordance with (b)(3), and (b)(4) does not override (b)(3)."[61] Movants also point out that "[in] this instance, there were no benefits paid with respect to either Mr. Joyce's policy or Mr. Porter's policy, let alone the exhaustion of those policies, prior to Plaintiff accepting the underinsured policy limits from State Farm."[62] Movants assert that neither the statute nor any case law cited by Christie provides that an underinsured motorist carrier can be held jointly and severally liable with other joint tortfeasors when those tortfeasors' policy limits have not been exhausted.[63]

17. Superior Court Civil Rule 56(c) provides that summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[64] The moving party initially bears

---

[59] Joyce and Porter's Reply ¶ 3, D.I. 49.
[60] *Id*.
[61] *Id.*
[62] *Id*. ¶ 4.
[63] *Id*.
[64] Super. Ct. Civ. R. 56(c); *Buckley v. State Farm Mut. Auto. Ins. Co.*, 139 A.3d 845, 847 (Del. Super. Ct. 2015), *aff'd*, 140 A.3d 431 (Del. 2016) (quoting *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).

the burden of demonstrating that the undisputed facts support its claims or defenses.[65] If the moving party meets its burden, the burden shifts to the non-moving party to show that there are material issues of fact to be resolved by the ultimate factfinder.[66] When considering a motion for summary judgment, the Court's function is to examine the record, including "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the non-moving party to determine whether genuine issues of material fact exist "but not to decide such issues."[67] Summary judgment will only be appropriate if the Court finds there is no genuine issue of material fact. When material facts are in dispute, or "it seems desirable to inquire more thoroughly into the facts, to clarify the application of the law to the circumstances," summary judgment will not be appropriate."[68] However, when the facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law.[69]

18. Eighteen *Del. C.* § 3902(b) provides in relevant part:

> (3) The insurer shall not be obligated to make any payment under this coverage until after the limits of liability under

---

[65] *Sizemore*, 405 A.2d at 681.

[66] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

[67] Super. Ct. Civ. R. 56(c); *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).

[68] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).

[69] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).

all bodily injury bonds and insurance policies available to the insured at the time of the accident have been exhausted by payment of settlement or judgments.

(4) An insured who executes a release of a single tortfeasor owner or operator of an underinsured motor vehicle in exchange for payment of the entire limits of liability insurance afforded by the tortfeasor's liability insurer shall continue to be legally entitled to recover against that tortfeasor for the purposes of recovery against the insured's underinsurance carrier. An insured who executes a release of 1 of multiple tortfeasors shall have rights against that tortfeasor and the insured's underinsurance carrier determined in accordance with the Uniform Contribution Among Joint Tortfeasors Act [Chapter 63 of Title 10] and paragraph (b)(3) of this section.

19. The chronology of events and the documents before the Court remove some facts from dispute: (1) State Farm offered to pay Christie it's liability policy limits on behalf of Clarke; (2) at the time Christie accepted that tender and executed the Release on August 11, 2023, she had filed a Complaint naming Clarke, Joyce, and Porter as defendants;[70] (3) the Release only discharged Clarke with Christie reserving "any claims for UM/UIM and PIP benefits against any entity, including any insurance company named herein;"[71] (4) on September 11, 2023 State Farm accepted Christie's claim for $25,000 in UIM benefits after having evaluated her claim for those benefits based on the information it had obtained at that time;[72] (5)

---

[70] Compl., D.I. 1.
[71] Mot. for Summ. J., at Ex. C, D.I.37.
[72] *Id*. at Ex. D.

15

Christie accepted those UIM benefits;[73] and (6) at the time it paid the UIM benefits, State Farm was a codefendant in Christie's Amended Complaint with Joyce and Porter.[74] Based on those indisputable facts, at least four scenarios come to mind -- State Farm either conducted a conscientious evaluation of the facts of the accident and determined that no additional insurance was available because neither Joyce nor Porter were negligent, it knew the limits of Joyce's and Porter's coverage and, nonetheless, knew it still would have to pay Christie's UIM benefits, it was misled about the existence of additional liability coverage, or it prematurely and improvidently provided UIM benefits it was not statutorily obligated to provide.[75]

20.  Just as certain facts are known and indisputable, certain other facts are not present in the record before the Court. Among them are: (1) whether Joyce and/or Porter bear any liability for Christies' injuries; (2) if so, how much and in what relative proportions to each other and to Clarke; and (3) what representations, if any, Christie made to State Farm regarding other liability insurance.

21.  The Court is not convinced that, when read in *pari materia*, §3902(b)(3), §3902(b)(4) and the Uniform Contribution Among Joint Tortfeasors Act (10 *Del. C.* Ch. 63) prohibit Christie from continuing her claims against Joyce

---

[73] *Id.* at Ex. E.
[74] Amend. Compl. D.I. 13.
[75] *See,* 18 *Del. C.* § 3902(b)(3): "[t]he insurer **shall not be obligated** to make any payment **until after** the limits of liability … have been exhausted by payment of settlement or judgments."

and Porter. Sec. 3902(b)(3) addresses only when State Farm is **obligated** to make a UIM payment to Christie. Certainly, the posture of the case would be different if State Farm was refusing to make a UIM payment. Then, it might be the party invoking § 3202(b)(3).[76] Here, though, it is non-parties to State Farm's contract with its insured who seek collateral benefits from State Farm's relationship with its insured.

22. Nothing in the language of § 3902(b)(3) confers any rights on other tortfeasors by virtue of State Farm's payment of UIM benefits. Nor is it evident why Joyce and/or Porter should benefit if State Farm made a non-judicial determination that they bore no liability for Christie's injuries, it would eventually be liable for UIM benefits anyway, it was misled in believing no other liability coverage existed, or it made an ill-advised UIM benefit payment. Movants characterize State Farm's UIM benefit payment as one made pursuant to § 3902(b)(3) and not made gratuitously because "it must be assumed" that its payment of its own liability policy limits exhausted all available liability limits.[77] Similarly, they characterize Christie's acceptance of the UIM payment as an implicit agreement that Clarke is solely responsible for the accident.[78] But, the cases they cite fail to support those

---

[76] *See, e.g., Rostocki v. GEICO General Ins. Co.,* 2014 WL 663078 (Del. Super. Ct. Nov. 17, 2014) cited by Movants.
[77] Mot. for Summ. J. at ¶ 8, D.I. 37.
[78] *Id.* at ¶ 9.

characterizations. They cite *Starun v. All American Engineering Co.*[79] for the proposition that "State Farm's payment of the underinsured motorist benefits cannot be deemed gratuitous, even if made voluntarily, but must be that it was made pursuant to the statute."[80] *Starun* was a worker's compensation appeal where the Delaware Supreme Court held that an employer who made compensation payments to an employee for three years was deemed to have done so pursuant to an implied agreement under the worker's compensation statute for purposes of the statute of limitations.[81] Similarly, they offer *H. H. Rosen Co. v. Chavin,*[82] in support of their contention that Christie implicitly understood when she accepted the UIM payment that Clarke was solely responsible for the accident.[83] In that case, our Supreme Court held that a tenant who remained in possession of a rental property and paid an increased amount of rent implicitly exercised a renewal option despite not having given the landlord the required notice.[84] Neither case, however, speaks to any effects the implied agreements had on any third parties rights vis-à-vis the litigants, and, thus, are inapposite here.

---

[79] 350 A.2d 765, 766 (Del. 1975).
[80] Mot. for Summ. J. at ¶ 8, n. 12, D.I. 37.
[81] *Starun,* 350 A.2d at 766.
[82] 257 A.2d 228 (Del. 1968).
[83] Mot. for Summ. J. at ¶ 9, n. 13, D.I. 37.
[84] *H.H. Rosin, Co.,* 257 A.2d at 230.

23. Movants are correct that § 3902(b)(4) was enacted in order to eliminate the need to include a reservation of rights against a tortfeasor's UIM insurance carrier when releasing the tortfeasor from liability. Nonetheless, the second sentence of § 3902(b)(4) provides:

> An insured who executes a release of 1 of multiple tortfeasors shall have rights against that tortfeasor and the insured's underinsurance carrier determined in accordance with the Uniform Contribution Among Joint Tortfeasors Act [Chapter 63 of Title 10] and paragraph (b)(3) of this section.[85]

The clear import of the reference to the Uniform Contribution Among Joint Tortfeasors Act, in the Court's view, is that a plaintiff who releases a single tortfeasor may have recourse to other remaining tortfeasors for compensation. The Act specifically provides as much:

> A release by an injured person of 1 joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be released, if greater than the consideration paid.[86]

24. Accordingly, the Court concludes the payment of UIM benefits to Christie does not resolve the remaining genuine issues of fact concerning whether

---

[85] 18 *Del. C.* § 3902(b)(4).
[86] 10 Del. C. § 6304(a)

either of both Movants are liable for damages sustained by Christie, and if either Movant is liable, in what amount.

25. The Court is mindful of State Farm's position that it is entitled to a refund of the UIM payment it made to Christie if Christie continues to pursue Joyce and Porter. That issue is not before the Court. Resolution of that question must await the development of additional facts, including, whether they have any liability for Christie's injuries and if so whether the amount of damages for which they are liable exceeds their liability coverage limits.

**THEREFORE,** for the reasons stated above, Defendants John A. Joyce and Kyheim L. Porter's Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDERED**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

20